[No. 45201. En Banc. November 9, 1978.]

ELDRIDGE P. LEVY, *Appellant,* v. NORTH AMERICAN
COMPANY FOR LIFE AND HEALTH INSURANCE,
*Respondent.*

*Schroeter, Goldmark & Bender, Paul W. Whelan,* and *James D. Hailey,* for appellant.

*Williams, Lanza, Kastner & Gibbs,* by *Don T. Mohlman,* for respondent.

HICKS, J.—Eldridge Levy sued the North American Company for Life and Health Insurance to recover under a disability insurance contract. He sought both the disability payments provided by the policy and damages arising from North American's wrongful refusal to pay such benefits. Levy appeals from an order dismissing the claim for damages. North American cross–appeals from: (1) the court's refusal to direct a verdict in its favor on the issue of policy liability; (2) an order denying its motion for judgment notwithstanding the verdict of the jury or, alternatively, for a new trial; and (3) the allowance of expert witness fees as costs against North American. We reverse on the appeal and affirm on the cross appeal.

Levy is a 55–year–old man who was formerly employed by the City of Seattle as a window washer. During the 10 years he worked for the city, his only medical problem was a bronchial condition of disputed description and etiology. Levy characterizes the condition as "periodic colds", while North American terms it a "long–standing history of lung disease". Trial testimony revealed that Levy had visited several doctors for treatment of this condition and that he had used an atomizer which dispensed a prescription medicine. He had not missed any days of work because of his

"colds", however, and had the atomizer refilled only 11 times during the 7 years preceding trial. Though some doctors characterized Levy's disorder as "asthma", a chronic condition, there was testimony that he suffered only from "asthmatic bronchitis", an acute problem that may occur once or a few times in a person's life, but is not related to chronic asthma.

In 1974, Levy attended a sales meeting at which he was convinced to purchase a disability insurance policy from North American. The application form, which included several questions regarding the applicant's medical history, was filled out by North American's agent. Even before the agent could read the application questions to him, Levy advised her that he had a history of colds and needed an atomizer to clear his bronchial tubes. He did not inform her that he had been under the care of doctors or that the atomizer dispensed prescription medicine.

Based on Levy's statements to her, the agent presumed he suffered only from common colds and did not pursue the matter further. At trial, she testified that had she known Levy had been under the care of doctors, she would have asked more specific questions. The agent also stated, however, she had "no interest whatsoever in the atomizer," and she would not have recorded the fact Levy visited a doctor to get a prescription refilled.

After Levy's disclosure, the agent read to him the three health questions which appeared on the application form. In each instance he gave the response which suggested his health was good. A policy was issued to Levy in April 1974.

In June 1974, Levy was pinned beneath a desk which he and other workers were moving and sustained arterial blockage in his leg. He was hospitalized in October, had several surgeries, and is now permanently disabled. He notified North American of his injury in December 1974, and made claim for benefits under the disability policy. In January 1975, after receiving a copy of Levy's medical history, North American rescinded the policy claiming that he had failed to disclose his bronchial condition. At trial, there

was testimony that had the ailment been disclosed, North American either would have issued a policy which excluded coverage of this particular condition—*i.e.*, the "asthma", or would not have insured Levy at all.

In November 1976, Levy brought this action for benefits under the terms of the insurance contract and for consequential, compensatory and punitive damages. The latter claim was premised on Levy's contention that the rescission of the policy constituted a breach of an implied covenant of good faith.

On the first day of trial, the court granted North American's motion to dismiss the claim for consequential, compensatory and punitive damages on the ground that a claim had not been stated. At the close of trial, the court directed a verdict for Levy on all elements of his cause of action on the insurance contract, except the question of whether he had made a misstatement on the application. That question, submitted to the jury on a special verdict form, was answered in the negative.

During the course of the proceedings, North American moved for dismissal, directed verdict, judgment n.o.v. and a new trial. All of those motions were denied. The court also denied North American's motion to strike expert witness fees from Levy's cost bill. The fees had been allowed as a sanction pursuant to CR 37(c) because the experts were called to prove a matter which North American had refused to admit under CR 36. Judgment was entered in March 1977.

Levy appealed, challenging the dismissal of his claim for damages, and North American cross–appealed from the denial of its motions. Thereafter Levy moved to transfer the case from the Court of Appeals to this court. The transfer was effected under RAP 4.3.

As to the dismissal of his claim, Levy argues that he is entitled to recover damages arising from North American's actions on either of two theories. The first is a contract theory under which he contends that he may recover consequential damages foreseeably resulting from North

American's breach of an implied covenant of good faith. The second is based in tort and allegedly supports a claim for damages proximately caused by North American's bad faith breach of contract.

We hold that Levy's complaint states a cause of action under the Consumer Protection Act, RCW 19.86. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978). Since that determination disposes of Levy's appeal, we do not discuss the tort and contract theories he alleges.

In *Salois,* we held that wrongful refusal to pay a claim breached an insurance company's duty to deal in good faith (RCW 48.01.030) and, consequently, was a per se violation of RCW 19.86.020. That provision declares that unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. The remedy for violation of RCW 19.86.020 is found in RCW 19.86.090, and includes actual damages, attorney's fees and specified punitive damages.

Here, Levy alleges that North American acted in bad faith by rescinding the policy without reasonable justification. Since that wrongful rescission, if established, would entitle Levy to relief under RCW 19.86.020 and RCW 19.86.090, we hold that his claim should not have been dismissed. *See Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975).

We recognize that Levy did not argue the application of this theory at trial. We also note, however, that the decision in *Salois,* which essentially created a new rule by clarifying or partially modifying earlier cases, was not rendered until after arguments on Levy's appeal were heard in this court. Moreover, while Levy did not specifically argue that RCW 19.86.020 was violated, his contention that North American breached an implied covenant of good faith reflects the essence of such a violation. *See Salois v. Mutual of Omaha Ins. Co., supra* at 359. Since a new rule was adopted after the trial in Levy's case, and since his claim is essentially the same as one under that rule, we are satisfied that he is entitled to its application in this

instance. *See Memel v. Reimer,* 85 Wn.2d 685, 538 P.2d 517 (1975).

On North American's cross appeal, its primary contention is that the trial court should have held the insurance company was not liable under the policy because Levy made a misstatement on his application. RCW 48.18.090 denies the right of an insurer to void a policy on the basis of misrepresentation unless the applicant made a false statement which either (1) was made with intent to deceive, or (2) materially affected the acceptance of the risk or the hazard assumed by the insurer. On Levy's claim on the policy, the trial court submitted the relevant questions under RCW 48.18.090 to the jury on a special verdict form with instructions that the issues of materiality and intent need not be considered unless the jury found that a false statement was made. North American asserts that the judge should have directed a verdict in its favor on the misstatement question, or should have entered judgment notwithstanding the verdict.

The tests for directing a verdict and for overturning a jury verdict once rendered are essentially the same. Both motions admit the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 554 P.2d 1041 (1976). The trial court has no discretion and may grant the motion only where there is no competent evidence nor reasonable inference which would sustain a jury verdict in favor of the nonmoving party. If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury. *Rasor v. Retail Credit Co., supra; Shelby v. Keck,* 85 Wn.2d 911, 541 P.2d 365 (1975).

The following questions appeared on the application form:

> 6. To the best of your knowledge and belief is the proposed covered person in good health and free from impairment, deformity or defect?

7. Has the proposed covered person ever been treated or been told he or she had, or had any known indication of:

A. Disease of heart, brain, kidney, lungs or nervous system?

B. Diabetes, hernia, cancer, or ulcers?

8. Has the proposed covered person been under observation or had medical or surgical advice or treatment or been hospital confined during the past 5 years other than for conditions stated above?

North American argues that, in view of Levy's medical history, the court should have ruled as a matter of law that he made a misstatement in failing to disclose his condition in responding to these questions. It contends Levy's testimony that he notified the agent of his condition may not be considered under the parol evidence rule.

■ Initially, it is clear that the evidence regarding the application process was properly considered under the rule that parol evidence may always be used to explain ambiguities in written instruments and to ascertain the intent of the parties. *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968). The use in the application form of only three medical questions framed in such general terms as "good health", "disease" and "impairment, deformity or defect", leaves substantial doubt as to the intention and understanding of the parties.

As to the sufficiency of the evidence, we find in the form of the application questions and in the testimony of Levy and the agent, adequate support for the court's denial of North American's motions. Question No. 6 asks whether the applicant, to the best of his knowledge and belief, is "in good health and free from impairment, deformity or defect." There was evidence here that Levy had revealed his condition to the agent prior to the time this question was asked. Since the agent failed to pursue the matter, the jury could reasonably have found that, for purposes of this question, Levy did not have such impairment or defect. Even in the absence of Levy's revelation, there was evidence that supported the verdict. Levy had never missed a

day of work because of his "colds", had not seen a doctor for 2 1/2 years, and had refilled the atomizer only 11 times in the preceding 7 years.

Question No. 7 asks whether the applicant has been told he had or had known indication of, among other things, "lung disease". Evidence to support the verdict can be found in Levy's testimony that he was not told that his illness was asthma. Moreover, as indicated above, the doctors' testimony did not clearly establish whether Levy had a "lung disease" or merely suffered from asthmatic bronchitis.

Question No. 8 is not repetitive of the other questions, but asks whether the applicant had been treated for conditions *other* than those stated above. While Levy's condition was not reported on the form, testimony indicated that it was disclosed by Levy and apparently removed from further consideration by the agent. Since that evidence could indicate that the condition was "stated above," it provides adequate support for the jury verdict.

North American also contends that even if Levy did not himself make a misstatement, he must be held, as a matter of law, to have made any false statements which were written on the application form by the agent. *Hein v. Family Life Ins. Co.,* 60 Wn.2d 91, 376 P.2d 152 (1962). While the court in *Hein* stated that an insured is bound by all misstatements which appear in his application, that rule has been eroded by subsequent decisions.

In *Fox v. Bankers Life & Cas. Co.,* 61 Wn.2d 636, 379 P.2d 724 (1963), for example, a previous injury was not disclosed on an insurance application. The court, on conflicting testimony as to what had been revealed to the agent, upheld the submittal of the representation question to the jury.

In *Olson v. Bankers Life Ins. Co.,* 63 Wn.2d 547, 388 P.2d 136 (1964), the insured fully disclosed his condition but the agent wrote down false answers. Informed of the error, the agent advised that the statements were not

important. A jury verdict for the insured was upheld. The court stated at page 551:

When an insurer's agent construes the materiality of questions in an application to the prospective insured by stating that certain information is immaterial or not required, any misrepresentations resulting therefrom are not chargeable to the applicant but to the insurer, for the reason that the agent is not the agent of the applicant but of the insurer.

We find *Fox* and *Olson* applicable to the facts here. There was some conflict as to what Levy revealed to the agent. The circumstances could have indicated to him that his condition was immaterial since the agent, who was familiar with the information required by North American, did not inquire further. Given the ambiguous nature of the questions and the circumstances under which they were answered, the question of misstatement was properly submitted to the jury.

North American's final contention is that the court erred in refusing to strike certain expert witness fees from Levy's cost bill. Before trial, when asked to admit under CR 36 that Levy was permanently disabled, North American refused to do so on the grounds that further discovery was necessary and that the request related to a central fact in dispute. North American persisted in this refusal even after its own examination pursuant to CR 35 disclosed Levy to be permanently disabled.

At trial, Levy was forced to call two witnesses to prove his disability. North American offered no evidence in rebuttal. For its refusal to admit Levy's disability, the trial court applied the sanction provided by CR 37(c) against North American and allowed $525 claimed in Levy's cost bill for witnesses. Although the two witnesses had also testified as to other matters, the court refused to apportion the fees, determining that the other testimony was incidental to that regarding disability.

■ Under CR 36, a party need not admit a central fact in dispute. *Reid Sand & Gravel, Inc. v. Bellevue Properties,* 7 Wn. App. 701, 502 P.2d 480 (1972). The purpose of the rule is to eliminate from controversy matters which will not be disputed. *Coleman v. Altman,* 7 Wn. App. 80, 497 P.2d 1338 (1972). In this instance, the question of disability, though central, was not disputed by North American. From its own examination, it was aware of Levy's condition. It offered no evidence on this point and failed to challenge the conclusions of the witnesses Levy was forced to call. Accordingly, we hold the allowance of the fees was not an abuse of the trial court's discretion. *See Reid Sand & Gravel, Inc. v. Bellevue Properties, supra.* Nor was it an abuse to refuse to apportion the fees. We agree with the trial court that the witnesses' other testimony was incidental to that on the disability question.

The trial court is affirmed on all matters raised by North American's cross appeal. On the question of consequential damages raised by Levy's appeal, the cause is remanded for consideration in light of *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978).

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

Reconsideration denied February 8, 1979.