[No. 10627–9–I. Division One. March 12, 1984.]

SAFECO INSURANCE COMPANY OF AMERICA, *Appellant,* v.
JMG RESTAURANTS, INC., ET AL, *Respondents.*

*Preston, Thorgrimson, Ellis & Holman, Charles E. Peery,* and *Michael A. Small,* for appellant.

*Kirkland & Coughlin* and *David T. Kirkland,* for respondents.

SODERLAND, J.*—Respondent JMG Restaurants, Inc., owned and operated the Trojan Horse Restaurant in Seattle, Washington. Respondent Joe M. Giese owned the corporation. The corporation and Joe M. Giese were named insureds under a fire insurance policy issued by appellant Safeco. The restaurant was damaged by fire on May 9, 1975. The fire department arson squad suspected Mr. Giese of arson. On August 6, 1975, the King County prosecuting attorney charged Mr. Giese with arson and with attempted grand larceny. On August 18, 1975, appellant rejected a proof of loss submitted by Mr. Giese on the ground that it did not comply with the policy. On October 7, 1975, the King County prosecutor dismissed the criminal charges that had been filed against Mr. Giese.

On December 23, 1975, appellant Safeco filed a declaratory judgment action seeking a declaration of nonliability under the fire policy. Respondents answered the complaint and counterclaimed for the policy proceeds and for damages caused by bad faith in denying coverage. The trial court bifurcated the declaratory judgment action from the bad faith counterclaim. On the declaratory judgment trial, the jury found by special interrogatory that Mr. Giese did not intentionally set the fire. Judgment was entered in favor of respondents for the policy proceeds. Appellant paid

---

*Judge Stanley C. Soderland is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

the judgment immediately and no appeal was taken.

The trial court dismissed respondents' bad faith counter-claim for failure to state a claim upon which relief can be granted. Respondents appealed that dismissal. By unpub-lished opinion noted at 23 Wn. App. 1040 (1979) the Court of Appeals held that the counterclaim stated a claim for relief under the Consumer Protection Act, RCW 19.86. The order of dismissal was reversed and respondents' counter-claim against appellant for bad faith in denying coverage was remanded for trial under the Consumer Protection Act.

The jury trial again resulted in a verdict in favor of respondents. The trial judge then conducted an evidentiary hearing on attorney fees under the Consumer Protection Act. Judgment was entered on the verdict for $87,392 and attorney's fees were allowed in the sum of $83,719. This is an appeal from that judgment on respondents' counter-claim for bad faith. The issues raised in this appeal relate to sufficiency of the evidence to sustain the verdict, propri-ety of jury instructions both given and refused, evidentiary rulings, a claim of comment on the evidence by the judge, misconduct of counsel in argument, and the propriety of the attorney's fee award. Respondents, by cross appeal, raise issues of error in excluding evidence, in assessing costs and in failure to correct a wrong interest rate inadvertently set out in the judgment. The issues will be discussed in the order they are presented in the briefs.

## EVIDENCE OF PRIOR FIRES

By motion in limine the trial court excluded evidence of previous fires at two other restaurants, the Norselander and the Steakout. Appellant claims that the trial court abused its discretion in that evidentiary ruling. Appellant relies upon its evidence that (1) Mr. Giese was the manager of those two other restaurants when the fires occurred, (2) they occurred within a period of 2½ years of the Trojan Horse fire, (3) Safeco's claims manager and its nationwide property supervisor viewed three fires in a single insured's history as highly unusual, and (4) these fires were a signifi-

cant and major factor in Safeco's investigation of this case.

ER 401 defines relevant evidence as evidence having a tendency to make a fact more or less probable than it would be without the evidence. ER 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The issue on appeal is whether the ruling of the trial judge was an abuse of discretion. *State v. Turner*, 29 Wn. App. 282, 627 P.2d 1324 (1981).

There was no evidence connecting Mr. Giese with those other two fires. The only basis for appellant's suspicion that those other two fires were connected with Mr. Giese was that he was manager of the restaurants when the fires occurred. One of the previous fires was a kitchen grease fire occurring during business hours when there was not even a suspicion of arson. In the other fire, someone else was accused of arson but Mr. Giese was never implicated in any way. Appellant had evidence that Mr. Giese was not a suspect. Accordingly, the probative value of this evidence in supporting appellant's denial of coverage was minimal or nonexistent. The danger of unfair prejudice to Mr. Giese, confusion of issues, and misleading of the jury which could be caused by insinuations of his connection with setting other fires is obvious. There was no abuse of discretion in this evidentiary ruling.

> Relevant evidence is generally admissible, ER 402, but may be excluded if its probative value is substantially outweighed by the danger of prejudice. ER 403. Where admission of evidence of prior bad acts is unduly prejudicial, the minute peg of relevancy is said to be obscured by the dirty linen hung upon it.

*State v. Turner, supra* at 289.

*State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952) rejected evidence of other crimes where the effect of the evidence would be "to generate heat instead of diffusing light."

*Hawks v. Northwestern Mut. Ins. Co.,* 93 Idaho 381, 461

P.2d 721 (1969) is in point. The insurance company defended on the basis of arson. Evidence was offered of many other fires which occurred on the respondent's properties under suspicious circumstances where the properties were all insured. The court held that the evidence of other fires was not admissible where the insurance company made no showing relating or attempting to relate the insured to the setting of the prior fires.

### FINDING BY PRIOR JURY

■ The first jury, which heard the declaratory judgment action and the counterclaim for the policy proceeds, made a specific finding, in answer to an interrogatory, that Mr. Giese did not intentionally set the fire which damaged the Trojan Horse Restaurant. No appeal was taken. The case then proceeded to trial on the cross claim under the Consumer Protection Act before a second jury. It is the trial before that second jury which is now here on appeal. The trial judge told the jury that the prior jury found that Mr. Giese did not intentionally set the fire.

As a part of the introductory oral instruction before opening statements were made, the trial judge read the following to the jury:

> In a prior hearing had in this case, and some reference has been made to it in the questioning, a jury was asked the following question: Did the defendants, J. M. Giese, intentionally set the fire which damaged the Trojan Horse Restaurant on May 9, 1975? That jury, operating under different evidence, answered in the negative.
>
> You are instructed that this information is given to you so that you might understand what has gone on in this case previously. You may not in any way use that verdict as evidence of any misconduct of Safeco Insurance Company in this case. You are instructed that you shall weigh Safeco's conduct solely upon the evidence introduced in this trial.

That statement to the jury was carefully worked out by the judge, in writing, with the participation of both attorneys. While appellant's attorney objected to the giving of any such instruction, he did approve the above language, if

the instruction was to be given over his objection.

As a part of the written instruction on issues, the court included the following:

> In a prior proceeding had in this case, a jury was asked the following question:
>> "Did the defendant, J.M. Giese, intentionally set the fire which damaged the Trojan Horse Restaurant on May 9, 1975?"
>
> That jury, operating under different evidence, answered in the negative.
>
> You are instructed that this information is given to you so that you might understand what has gone on in this case previously.
>
> You may not, in any way use that verdict as evidence of any misconduct of Safeco Insurance Company in this case. You are instructed that you shall weigh Safeco's conduct solely upon the evidence introduced in this trial.

Instruction 8.

Appellant contends that giving that information to the jury was improper because that jury verdict had not been returned yet and could not have been a fact known to Safeco at the time it was processing the claim. The trial court did not commit error. This was a second phase in the trial of the same case. If the issues had not been bifurcated for trial, a jury would have had two issues to decide: (1) whether Mr. Giese set the fire, and (2) whether appellant violated the Consumer Protection Act by bad faith handling of the claim. Here, the first issue had been settled between these parties by the prior verdict. The judge had to instruct the second jury not to retry that issue. Without such an instruction, the second jury would have had to determine the first issue before it could get to the second, because there could be no bad faith claim against appellant if respondent had set the fire.

The trial judge informed the jury of the prior verdict in a neutral manner. The jury was told that it could not use the prior verdict as evidence in this case. In addition, instruction 12 told the jury not to use hindsight, but to measure

the reasonableness of Safeco's conduct as of the time that the conduct occurred.

## STIPULATION THAT THERE WAS NO MALICE OR INTENT TO INJURE

In the order dismissing the bad faith counterclaim (which was reversed by the Court of Appeals) the respondents stipulated that appellant did not act with malice or intent to injure in denying payment of the fire loss and that respondents did not claim outrageous conduct insofar as that would include any intentional or malicious aspects.

Appellant's assignment of error states that the trial court erred in pretrial rulings which prohibited appellant from offering the stipulation into evidence. In the statement of issues, appellant states that the trial court excluded the evidence. The record shows, on the other hand, that the trial court specifically ruled that that evidence could be offered. It was respondent Giese who made a motion in limine to preclude use of that stipulation. That motion was denied. Respondents' attorney then advised that he would offer additional oral statements which he contended were part of the stipulation. Appellant's attorney contended that those statements were merely argument and not part of the stipulation. The trial judge ruled in limine that either side could offer what they wanted, that any evidence offered would be subject to the rules of evidence, and that the judge would not, at the motion in limine, make any advance statement on admissibility under the rules of evidence.

In denying respondents' motion in limine, the judge stated:

> The decision of this court on this particular issue is, Mr. Brown, you may introduce the part of this stipulation you like. Mr. Kirkland, if you wish to introduce the additional parts, you may introduce that subject to the rules of evidence on both parties. The court will not make a statement on this.

The judge further stated to appellant's attorney:

> You have what you consider to be the stipulation. Mr. Kirkland has what he considers to be the stipulation. I

will permit you to introduce, subject to the rules of evidence, what you consider to be the stipulation. If Mr. Kirkland then says, you know only part of the stipulation was introduced, you can have the argument that that wasn't a part of the stipulation, that was argument.

Appellant's attorney then told the judge that he would not be offering the stipulation. He amended that to say that he reserved on it but would not mention it in opening statement. In opening statement appellant's attorney referred to the stipulation as a fact which he would be producing. Over objection, he was allowed to read his version of the stipulation to the jury that respondents did not claim malice or intentional injury. In overruling the objection, the judge referred to her previous order. She had ruled that either party could offer it. It now appeared to the judge that appellant intended to do so. Appellant's brief states that the trial attorney advised the court that he would not offer the order of dismissal in evidence, "and was relegated to simply reading the stipulation to the jury in his opening statement." Of course, the reading of the stipulation in opening statement was improper if there was no intent to offer the evidence. Appellant's trial tactics improperly got this matter before the jury without offering the evidence. Appellant never did offer the evidence. The present claim that the trial court excluded the evidence is contrary to the record.

## JURY INSTRUCTIONS

We hold that the trial court did not commit error in instructions given or refused.

Appellant assigns error to instruction 8 which recited respondents' claims. Appellant objects that this was a lengthy and inflammatory recital. Appellant further objects that the claims in instruction 8 that appellant "unreasonably" failed to take certain action were error because they amounted to nothing more than allegations of mere negligence. Instruction 9 told the jury, in the words of WPI 20.05, that the preceding instruction was merely a summary of the claims, not evidence. Instruction 8 was not error.

The trial court gave the following instructions:

Washington Law, RCW 48.01.030 provides:
"The business of insurance is one affected by the public interest requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured and their representatives rests the duty of preserving inviolate the integrity of insurance."

Instruction 10.

Good faith as used in RCW 48.01.030 means fair, honest and objective dealings by both parties to the insurance policy. If an insurance company unreasonably denies or delays payment of benefits due under an insurance policy and does so without giving the insured's interests as much consideration as its own, the insurance company has breached its duty of good faith and fair dealing.

An insurer's duty to use good faith toward its insured may be breached by conduct which does not constitute intentional bad faith. The absence of good faith does not necessarily imply dishonesty, misrepresentation, deceit or fraud.

Instruction 11.

In evaluating the evidence to determine if there was any unreasonable conduct or bad faith by the plaintiff, Safeco, you may not apply any tests involving hindsight. The reasonableness or unreasonableness of the action by the company must be measured as of the time that the conduct occurred.

Instruction 12.

An insurer has no absolute duty under any and all circumstances to pay policy proceeds rather than litigate the obligation to pay them if reasonably and in good faith the insurer believes that a bona fide issue of liability or damages exists.

Instruction 13.

Appellant argues that instructions 10 and 11 as given by the court are error because the Consumer Protection Act applies only where there is evidence of fraud or intentional wrongdoing, or reckless or wanton conduct in the handling of the claim.

The instructions given are expressed in terms of "fair, honest and objective dealings" and a requirement to act "reasonably". The conduct need not amount to intentional bad faith or dishonesty, misrepresentation or fraud. An insurance company violates the Consumer Protection Act if it acts without reasonable justification in handling a claim made by its insured. The unpublished opinion of the Court of Appeals which sent this case back for trial, 23 Wn. App. 1040 (1979), held that the allegation of acting without reasonable justification stated a claim under the act. That opinion also held that the stipulation that Safeco acted without malice and intent to injure did not bar the action because an insurer's duty to use good faith toward its insured may be breached by conduct short of intentional bad faith.

*Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 (1978) held that wrongful refusal to pay a claim of its insured breached the insurance company's duty of good faith and fair dealing under RCW 48.01.030, and was a violation of the Consumer Protection Act, RCW 19.86-.020. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 586 P.2d 845 (1978) held that an allegation of bad faith in rescinding a policy stated a claim under the Consumer Protection Act.

*Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 659 P.2d 509 (1983) involved an issue whether refusal to pay the claim of an insured breached the duty of good faith and fair dealing under the Consumer Protection Act. The court equated liability for bad faith with the duty to use good faith, both arising from the fiduciary relationship. The court at page 73 quoted and relied upon *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 473 P.2d 193 (1970), which involved breach of duty of good faith "within the related context of bad faith failure to adjust or settle a claim within policy limits.":

> Some jurisdictions have attempted to define the liability of the insurer for bad faith to require an actual intent to mislead or deceive another and stated there would be

no liability in a particular transaction unless there was conduct equivalent to fraud or actual bad faith. The basis of liability of the insurer is not this narrowly founded in Washington. The recognition in *Murray [v. Mossman,* 56 Wn.2d 909, 355 P.2d 985 (1960)] that the duty of the insurance company springs from a fiduciary relationship implies a broad obligation of fair dealing.

The court in *State Farm Mut. Auto. Ins. Co. v. White,* 248 Md. 324, 236 A.2d 269 (1967), recognized that for liability to exist on the part of the insurer, the term "good faith" did not tend to connote or imply by use of that term that dishonesty, misrepresentation, deceit, or a species of fraud must be present . . .

(Citations omitted.) *Tyler v. Grange Ins. Ass'n, supra* at 173–74.

The court in *Phil Schroeder, Inc. v. Royal Globe Ins. Co., supra* at 74, went on to quote from 16 G. Couch, *Insurance* § 58:165 (2d ed. 1966) as follows:

Where an insurer refuses to make payment or delays, it must do so in good faith upon reasonable grounds.

A refusal to pay based upon mere conjecture may be found to be vexatious.

Appellant assigns error to the trial court's refusal to give the following requested instructions:

If you find that the insurer had reasonable grounds, based upon the evidence then before it, to believe that the insured had committed an act that violated the policy provisions or the laws of the State of Washington, then you must find that it acted in good faith with respect to its insured.

Proposed instruction 11.

The duty of an insurer to act "without bad faith" requires that the insurer must have acted recklessly or wantonly with respect to the handling of its insured's claim. Negligence is insufficient to support a finding that the insurer acted in bad faith.

Negligence is defined in the law as the failure to exercise that degree of care which would have been exercised by the reasonably prudent person under same or similar circumstances.

Recklessness is defined as acting without any legal justification whatsoever and without any regard whatsoever for the interests of another.

Proposed instruction 12.

Appellant's proposed instruction 11 was properly refused. That instruction points up particular evidence. It is too broad in that it requires a finding of good faith if there is evidence of any violation by the insured of any policy provision or law regardless of its relevance or how insignificant it may be. It ignores all other evidence which may point to bad faith. Appellant can argue its position under instruction 13 given by the court. The court's instruction, in general terms, states that the appellant may raise any bona fide issue of liability if it acts reasonably and in good faith.

Appellant's proposed instruction 12 was properly refused. It is not a correct statement of the law. The term "whatsoever" in the last paragraph is argumentative. Appellant's proposal contained the underlined words "negligence is insufficient". Underlining a statement in an instruction would be improper. Attorneys should propose instructions which are not argumentative and are not in an unacceptable form.

Appellant assigns error in refusing a requested instruction which quotes a provision in the insurance policy requiring respondent to file a proof of loss. The proposed instruction would tell the jury that Safeco is under no obligation to pay under the contract until that provision of the policy has been fulfilled. There was extensive evidence relating to the proof of loss controversy. This was not a contract suit. The issue was the question of good faith. The general instructions given by the court allowed both sides to argue this evidence and their theories of the case in that connection. The trial court was not required to give an instruction pinpointing particular evidence.

## SUFFICIENCY OF THE EVIDENCE

Appellant argues that the court should have directed a verdict in its favor because there was not enough evidence

to submit the claim under the Consumer Protection Act to the jury. Appellant's brief recites the evidence in its favor. There is no doubt that there was considerable evidence in appellant's favor. That is not the issue. The question is whether there was evidence, or reasonable inference from evidence, sufficient to warrant submitting the case to the jury and to sustain the jury's verdict under the Consumer Protection Act. The issue is whether there was evidence from which a reasonable person could conclude that appellant was not fair, honest and objective, or that appellant acted without reasonable justification in the handling of respondents' claim.

The jury is entitled to pick and choose what evidence it wishes to believe and may draw any reasonable inferences therefrom. The jury is entitled to reject the evidence from appellant's witnesses as to their motives and as to what steps were taken in handling the claim. In ruling on a claim of sufficiency of evidence, a court must indulge all reasonable inferences in favor of the jury verdict.

Appellant gave as its stated reason for rejecting a proof of loss submitted by respondents their noncompliance with certain conditions of the insurance policy. Appellant vigorously argued at trial that respondents had not properly filed their proof of loss because the statement did not set out the time of the fire, origin of the fire, and the actual cash value of each item of property on which a loss had been claimed. However, one of appellant's own witnesses testified that the *real* reason respondents' proof of loss was rejected was because Mr. Giese was an arson suspect and not for any technical violations of the policy. Thus, the jury could have found that appellant employed deceptive practices and acted unreasonably in processing respondents' claim.

There was evidence to support appellant's suspicion that Mr. Giese set the Trojan Horse fire, but the jury could have rejected that evidence or drawn other inferences. The evidence that Mr. Giese was seen leaving the restaurant shortly before the fire did not necessarily prove that no

other person left the restaurant without being seen. The evidence that respondents were in financial trouble and the restaurant was losing money was disputed, and the jury could have found otherwise. The arson squad of the fire department had a file full of suspicions but not sufficient evidence to implicate respondent in setting the fire. A refusal to pay a claim based on suspicion and conjecture may be found to violate the fiduciary duty of good faith. Such refusal must be based upon reasonable grounds. The prosecuting attorney dropped the criminal charges. Appellant persisted in relying heavily on the fact that respondent was a "suspect" as a reason for not paying the claim. The jury could have found that appellant was not making a reasonable and objective analysis of the suspicion evidence. The jury could have found that a reasonable and objective person would have recognized that the evidence did not rise above a suspicion and would not have used it as a reason for not paying the claim of its insured.

The jury could have found that appellant refused to pay the claim without balancing the financial interests of its insured into the decision. The jury could have found that appellant did not cooperate reasonably in determining the amount of loss and used the appraisal procedure for purposes of delay. The jury could have inferred that the declaratory judgment action was started for delay, without justification and without conducting sufficient investigation on its own. There is controversy throughout the record as to what steps appellant did or did not take in the investigation of the claim.

The trial court did not commit error in refusing to direct a verdict in favor of appellant. The evidence is sufficient to support the jury verdict in favor of the respondents.

## ELEMENTS OF DAMAGE

Appellant assigns error to the giving of instruction 16 which submitted to the jury the elements of damage to be considered, arguing that the evidence was not sufficient to support the items of damage claimed. Appellant argues

that the damage claim was based upon speculation or was contrary to the evidence. There was a great deal of conflicting evidence on damages caused by the refusal to pay the fire loss to the going business. The trial judge did not commit error. The evidence need not be as precise in proving the amount of damage as the substantial evidence required to prove liability for damages.

> The determination of the propriety of a damage instruction is not, as appellants suggest, measured by a substantial evidence test. Once liability for damages is established, a more liberal rule is applied in allowing assessment of the amount of damages. *Larson v. Union Inv. & Loan Co.,* 168 Wash. 5, 12, 10 P.2d 557 (1932). In this case there was evidence which afforded a reasonable basis for estimating respondent's loss.

*Moore v. Smith,* 89 Wn.2d 932, 944, 578 P.2d 26 (1978).

### COMMENT ON THE EVIDENCE

Appellant complains that the trial judge commented on the evidence by expressing surprise in the presence of the jury when appellant rested its case. Appellant says this conveyed to the jury that the judge believed Safeco's evidence to be insufficient. There is no merit to this claim of error. Appellant has taken the judge's remark out of context. The record shows that when appellant's trial attorney rested, he stated that he was sure everyone would be amazed that he was doing so. The judge then called for rebuttal evidence. There was none. The judge then said that she was taken somewhat by surprise and would recess for the day because she had some work to do before instructing the jury. The judge's statement was neutral. It clearly referred to both sides having no more evidence without giving her any warning. It was a harmless explanation to the jury as to why it was recessing early. Any element of surprise at appellant's attorney resting his case was totally neutralized by the prior statement of appellant's attorney that he was sure everyone would be amazed.

The entire colloquy on this subject is as follows:

THE COURT: Mr. Brown, you may call your next witness.

MR. BROWN: To everyone's amazement, I'm sure, the plaintiff will rest.

THE COURT: Mr. Kirkland, do you have any rebuttal?

MR. KIRKLAND: No, your Honor. So now what do we do?

THE COURT: The Court's taken somewhat by surprise. At this time we will recess for the day. The Court has some work to do prior to reading the jury instructions to you, so at this time the Court is going to permit you to go home early again.

The judge's remark was not a comment on the evidence in any event. A comment on the evidence is defined in *Jankelson v. Cisel,* 3 Wn. App. 139, 145–46, 473 P.2d 202 (1970) as follows:

To fall within the ban of article 4, section 16, the jury must be able to infer from the trial judge's comments that he personally believes or disbelieves evidence relative to a disputed issue. The action of the judge must be such that it will fairly import to the jury an expression of judicial opinion relative to credibility of some significant evidence.

Furthermore, no objection was made. No curative instruction was requested. The court's written instructions directed the jury to disregard anything that appeared to be a comment on the evidence.

## CLOSING ARGUMENT

Appellant argues that the trial court allowed respondents' attorney to make improper closing argument by going beyond the evidence in explaining his own activities in connection with the matter. That argument was in direct response to statements outside the record which appellant's attorney had made in his closing argument relating to the same subject of activities by respondents' attorney. The court had ruled that appellant's attorney was making statements outside the record as to what time respondents' attorney became involved with certain matters. Appellant's attorney then said:

Mr. Kirkland then was rather promptly thereafter, he was involved in this thing. He can say later if he wants.

 When it was respondents' turn to argue, the attorney commented on the same subject matter. He advised the judge that he was responding to what opposing counsel had said. The judge overruled the objection. That ruling was not error. Not only had appellant's attorney opened up this matter and argued it, but he had specifically said to the jury that opposing counsel could respond: "He can say later if he wants." It would have put opposing counsel at a definite disadvantage if he had not responded to that invitation.

> Counsel may not argue a question to the jury and claim error when his adversary does likewise. Such argument by the complaining party waives the error, if any.

*Krieger v. McLaughlin,* 50 Wn.2d 461, 463, 313 P.2d 361 (1957).

The matter was not significant enough to require a reversal in any event. The judge and both lawyers told the jury that attorneys' argument was not evidence.

## RIGHT TO A JURY TRIAL ON ATTORNEY'S FEES

Appellant argues that the court erred in denying a jury trial on the issue of attorney's fees. Respondents did not offer evidence or request instructions on the claim for attorney's fees during the jury trial. Appellant urges that this is a waiver of the claim for attorney's fees. Respondents requested a hearing on attorney's fees after the jury had returned its verdict. The court received evidence, made findings of fact and determined the award of attorney's fees. During the jury trial, appellant did not propose instructions on attorney's fees and did not let the court know its position on attorney's fees until after the verdict was returned and the jury was discharged.

King County Local Rule 40(d)(5) provides as follows:

> Attorney's Fees; Evidence to be Presented. Evidence as to the reasonable value of attorney's services shall be presented following the presentation of all evidence on both sides respecting the matters at issue, and following

a determination by the court that the party applying is entitled to an award of attorney's fees.

If appellant wanted to challenge that local rule of procedure, the matter should have been presented to the judge before the case was submitted to the jury, while the judge still had some opportunity to rule on appellant's proposed procedure.

■ The statute providing for a civil action for damages under the Consumer Protection Act, RCW 19.86.090, provides for an award of "the costs of the suit, including reasonable attorney's fees". The amount of reasonable attorney's fees under RCW 19.86 is within the discretion of the trial court. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 553 P.2d 423 (1976); *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 586 P.2d 845 (1978). Attorney's fees are treated as part of the costs of the suit and the amount is within the trial court's discretion. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 557 P.2d 342 (1976). A jury could not exercise the trial court's discretion. Appellant cites no Washington case holding that the jury should rule on allowable costs of the suit and establish the amount of attorney's fees. We hold that it is the function of the trial judge to exercise discretion and set the award of reasonable attorney's fees in a jury case and that King County Local Rule 40(d)(5) is a proper procedure.

### REASONABLENESS OF ATTORNEY'S FEES

The judge awarded attorney's fees for work done in the first phase of the trial, defending the declaratory judgment action, as well as for the bifurcated issue of damages under the Consumer Protection Act. Appellant claims that this was error because the respondents' cause of action under the Consumer Protection Act was not established until after the decisions in *Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 and *Levy v. North Am. Co. for Life & Health Ins., supra*, in 1978. By that time the first phase of this bifurcated trial, liability under the policy

provisions, had already been tried. Appellant argues that they could have been separate actions and were tried as though they were separate actions.

The trial court found that they were not separate actions and that the defense of the declaratory judgment action was an essential part of the prosecution of the bad faith counterclaim. Had respondent lost the first phase of the case there could not have been any recovery on the Consumer Protection Act claim.

Appellant points to no evidence to controvert the following findings of fact by the trial court:

> Safeco had a legal right to bring the declaratory judgment action to determine its obligation to defendants under the insurance policy. The declaratory action brought by plaintiff, had plaintiff prevailed, would have established a defense to the obligation to pay policy proceeds.

Finding of fact 4.

> The defense of the declaratory judgment action and the prosecution of the bad faith counterclaim were an integral part of the whole, and preparation and presentation of the declaratory judgment action constituted preparation for litigation of the bad faith claim. The defense of the declaratory judgment action constituted proof of an element of the bad faith claim. It should make no difference whether Safeco filed the declaratory action first or whether defendants sued on the policy claim and bad faith claim first. The court should observe the substance of the claims rather than the form.

Finding of fact 5.

Appellant further challenges the reasonableness of the attorney's fees set by the court. The proceedings were extended and hard fought. The trial judge held a factfinding hearing on attorney's fees and entered findings of fact and conclusions of law. There is no showing that the fees awarded were an abuse of discretion. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., supra; Levy v. North Am. Co. for Life & Health Ins., supra.*

*Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581,

675 P.2d 193 (1983), decided long after the trial of the case, held that the hours reasonably spent should be the starting point in fixing a fee. That case reversed the trial judge because he did not eliminate duplication found in the time records and because the hourly fee was doubled to reflect the good quality of work performed. Doubling the fee based on its contingent nature was allowed.

In the present case the trial judge was well within the guidelines laid down in *Bowers v. Transamerica Title Ins. Co., supra*. The judge considered the work done and the complexity of the cases. The original declaratory judgment action was tried before a jury for approximately 2 weeks in 1977. The bad faith counterclaim was tried to a jury from January 21, 1981 to February 17, 1981. There was an appeal to the Court of Appeals prior to this present appeal. Application for discretionary review of rulings before trial was made both to the Supreme Court and to the Court of Appeals. The judge found that respondents' attorney reasonably expended 617 hours between December 1975 and May 29, 1979 and that $50 per hour was reasonable for that period. The judge found that respondents' attorney reasonably expended 632.7 hours from May 30, 1979 to February 17, 1981, and that $70 per hour was a reasonable fee for that time period. The judge then allowed $4,575 for 61 hours spent on the attorney's fee hearing and $4,005 for 53 hours spent by an associate counsel. The fee allowed was the hourly rate only. The judge considered the contingent nature of the fee but did not increase the hourly rate award.

In addition to the other factors considered, finding of fact 9, which is not assigned as error, reads as follows:

> The Court in determining the reasonableness of the attorneys' fees awards considered the following factors: (1) the time and labor required of counsel; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the amount involved and the results obtained; (5) the ability, experience and reputation of counsel for the parties; and (6) the fees customarily charged for similar legal services.

Where a trial judge allows no more than a basic hourly rate for time reasonably spent by attorneys, there is no abuse of discretion. This was a complicated case which went through several hearings and was resisted vigorously on every issue.

## DAMAGES TO MRS. GIESE

On their cross appeal, respondents allege error in granting appellant's motion in limine against introducing evidence of damage to Mrs. Giese. But the way in which this matter came about demonstrates that there was no error. The parties were arguing the motion in limine. The court had not yet ruled. Respondents' attorney acknowledged that he had hesitance about having Mrs. Giese testify because it might be error and jeopardize any judgment he might get. He suggested that he might have Mr. Giese testify as to the effect on his wife. The judge accepted his suggestion and ruled that Mr. Giese could testify as to the effect on his wife and, to avoid any possible error, damages to Mrs. Giese would not be allowed. The judge said she was prepared to permit Mrs. Giese to testify until she heard the attorneys' assessment of the matter. Respondents invited the ruling about which they now complain. Respondents' attorney did not offer any testimony by Mr. Giese about ill effects to his wife.

## COSTS UNDER CONSUMER PROTECTION ACT

The trial court allowed statutory costs. Respondents assign error to the failure to allow discovery deposition costs and the cost of expert appraisers. Respondents argue that RCW 19.86.090 should be construed to allow "full costs" and not limit costs to statutory costs allowed in other cases. There is no showing of an abuse of discretion.

## INTEREST RATE ON THE JUDGMENT

Respondents allege error in refusing to correct the interest rate set forth in the judgment. Respondents' attorney

prepared the form of judgment. He says that he inadvertently stated 8 percent in the judgment whereas the legal interest rate for a judgment at that time was 10 percent. In proceedings before the lower court there was controversy over whether a stipulation of the parties covered only the date from which interest would run or covered the interest rate as well. The verdict was returned February 17, 1981, and the judgment entered August 25, 1981. The record shows that entry of judgment had been scheduled for May 1, 1981, and when there was delay it was stipulated by letter that interest would run from May 1, 1981. The record does not show a stipulation as to the interest rate, nor is any reason apparent why a winning party would stipulate to 8 percent interest when the statute provided 10 percent.

In any event, regardless of who prepared the form of judgment, it is the responsibility of the court to enter a judgment which complies with the statute. RCW 4.56.110 provided at that time, in 1981:

> Interest on judgments shall accrue as follows:
>
> . . .
>
> (2) . . . judgments shall bear interest at the rate of ten percent per annum from the date of entry . . .

It was the court's duty to correct any provision of the judgment which was contrary to the terms of the statute. The trial court committed error by not doing so.

## ATTORNEY'S FEES ON APPEAL

Respondents' attorney makes an adequate showing of time reasonably spent on the appeal and a reasonable fee of $75 per hour. On a time basis, respondents are allowed attorney's fees on appeal in the sum of $12,600. Respondents' request for expenses incurred in connection with the appeal is denied. Statutory costs are allowed.

The judgment is affirmed with the exception of the interest rate named therein. The matter is remanded to the

24

trial court to correct the interest rate in the judgment from 8 percent to 10 percent.

WILLIAMS and CALLOW, JJ., concur.