[No. 5472-1-III. Division Three. June 26, 1984.]

EARL WHISTMAN, ET AL, as *Personal Representatives, Respondents,* v. WEST AMERICAN, *Appellant.*

*Patrick R. Acres,* for appellant.

*Jerry L. Sorlien,* for respondents.

McINTURFF, J.—Plaintiffs, Earl Whistman and Gracie Carrico, are the personal representatives of the estate of Ray Whistman who died on November 15, 1980. They brought this action against West American of the Ohio Insurance Group of Insurance Companies (West) seeking a declaratory judgment that Ray Whistman's homeowner's policy through West provided coverage for the destruction of his house by fire on February 28, 1981. The complaint also sought damages for West's alleged violation of the unfair insurance practices act, the unfair claims practice regulations, and the Consumer Protection Act. The court granted the personal representatives summary judgment on the issue of coverage, but denied them summary judgment on the second cause of action. Subsequently, the court granted West summary judgment on this issue. Both parties appeal.

The events leading to the claim for coverage are:

November 15, 1980—Ray Whistman died.

December 23, 1980—Insurance agent Robert Trask sent a notice of renewal of the insurance policy then in effect from February 2, 1980 until February 2, 1981, to Ray Whistman at his address. Trask attested that he knew Mr. Whistman had died, and the letter was his attempt to contact the

person caring for his estate. The letter was returned to his office. He then contacted the lienholder who informed him that Earl Whistman was the personal representative.

February 19, 1981—Trask sent the following letter to Earl Whistman:

[A]s of February 2, 1981, have requested cancellation of the policy due to the fact that we have been unable to contact anyone with an interest in the house.

If you do have an interest in the house and wish it insured, please let me know so I can rewrite the policy for you.

On the same date, Trask also sent the following memo to West:

I am returning this policy to you for flat cancellation. Both Mr. and Mrs. Whistman are deceased. The bank's interest has been satisfied and no one seems to know who the house belongs to at this time.

February 25, 1981—Mrs. Earl Whistman made the following reply to Trask's letter:

The house is empty at present. . . . We feel the insurance policy should be renewed. Please renew it and send us a copy along with the bill.

That same day West addressed a notice of cancellation to Ray Whistman. The notice was sent to the lienholder, but not to Ray Whistman's address. The notice stated:

Cancellation will take effect on the following date at the same hour on which the policy became effective: 3–9–81.

. . .

You are hereby notified in accordance with the terms and conditions of the above–mentioned policy, that your insurance will cease the hour and on the date mentioned above.

February 27, 1981—Trask acknowledged receipt of Mrs. Whistman's letter of February 25 stating:

We have already cancelled the present policy; the cancellation will become effective March 9, 1981. Due to the fact that we have no other insurance as supporting business and that the house is vacant, we cannot write the

insurance. I am therefore suggesting that you contact your local agent and have him insure the house for you.

February 28, 1981—Fire destroyed the house which was the subject of the insurance policy. The personal representatives had received neither West's nor Trask's notices of cancellation by the time of the fire.

The insurance policy provides:

5. Cancellation.

. . .

(b) We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. . . . Proof of mailing shall be sufficient proof of notice:

(1) when you have not paid the premium . . . we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

The sole issue in West's appeal is whether the Superior Court erred when it determined as a matter of law that the insurance policy provided coverage for the loss caused by the fire on February 28, 1981. We find no error.

■ As noted above, the policy states: "When you have not paid the premium . . . we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect." The reference to "premium" is not limited to premiums paid during the term of the insurance and reasonably could be read as including premiums due in order to effect renewal.[1] See *State Farm Mut. Auto. Ins. Co. v. O'Brien*, 24 Ariz. App. 18, 535 P.2d 46, 49 (1975). It is a well

---

[1]Contrast, *Safeco Ins. Co. v. Irish*, 37 Wn. App. 554, 556, 681 P.2d 1294 (1984), which held that an automobile policy terminated at the end of the current policy term where the policy specifically provided:

> If we offer to renew and you or your representative do not accept, this policy will automatically terminate *at the end of the current policy period*. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

We could not find any similar provision in the homeowner's policy here. Further, we are unpersuaded by West's argument that the policy terminated at the end of the period for which it was written because the policy did not provide a grace period. The noted ambiguity in the cancellation provision has the effect of providing a grace period, *i.e.*, coverage could not terminate until notice of cancellation was given.

settled rule of construction that ambiguities in insurance policies are resolved in favor of the interpretation which provides coverage. *Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 167, 588 P.2d 208 (1978). Accordingly, we construe the policy language here as requiring West to give 10 days' notice prior to cancellation for failure to pay a renewal premium. Since West's notice of cancellation was not effective prior to the date of the fire loss, that loss is covered by the policy. We therefore affirm the judgment of the Superior Court respecting coverage.[2]

The issue in the personal representatives' appeal is whether the court erred when it determined that West's actions did not constitute a violation of the unfair insurance practices statute, the unfair claims practice regulations and the Consumer Protection Act. They contend the court should have granted them summary judgment on this issue. We hold summary judgment should have been denied both parties because there existed a material dispute concerning West's good faith in denying coverage.

■ RCW 48.01.030 provides:

The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

The breach of the duty of good faith also constitutes a violation of the Consumer Protection Act, RCW 19.86. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978). WAC 284-30-330 defines unfair methods of competition and unfair or deceptive acts or practices in the business of insurance.

An insurer's breach of the duty of good faith may be

---

[2]West's arguments on appeal are directed to proving a new contract of insurance was never entered into by Trask and the personal representatives. However, a new contract was not necessary because, under the above analysis, the first contract was still in effect.

established without a showing of misrepresentation, deceit, or other species of fraud. *Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 173–74, 473 P.2d 193 (1970). Actions by an insurer done without reasonable justification are done without the good faith mandated by RCW 48.01.030 and are sufficient to constitute a violation of the Consumer Protection Act. *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.,* 37 Wn. App. 1, 11, 680 P.2d 409 (1984). However, the "mere denial of coverage due to a debatable question of coverage is not bad faith giving rise to a CPA violation." *Smith v. Ohio Cas. Ins. Co.,* 37 Wn. App. 71, 74, 678 P.2d 829 (1984) (citing *Miller v. Indiana Ins. Cos.,* 31 Wn. App. 475, 642 P.2d 769 (1982)).

Here, West's position in refusing the personal representatives' claim was that the policy in question had expired and, therefore, no coverage existed at the time of the fire. We have held the policy ambiguous and resolved the ambiguity in favor of the insured, as required by applicable rules of construction. *Shotwell v. Transamerica Title Ins. Co., supra.* This holding does not mean that West's interpretation was unreasonable and therefore in bad faith as a matter of law. *Miller v. Indiana Ins. Cos., supra* at 479; *Smith v. Ohio Cas. Ins. Co., supra* at 74–75. Hence, the Superior Court properly denied the personal representatives' motion for summary judgment on this issue. However, the court erred when it granted West summary judgment. A jury reasonably could believe West initially intended coverage to continue until the effective date of cancellation and changed its interpretation of the policy after the fire to avoid the claim. This determination would require an evaluation of witness credibility and therefore must be left to the trier of fact. Accordingly, we remand this issue for trial.

In conclusion, we affirm the summary judgment which held the insurance policy covered the fire loss in question. We reverse the summary judgment which held as a matter of law that West had not violated the insurance statute and regulations and the CPA. This cause is remanded for trial

586

on the issue of whether West acted in good faith in denying the claim of loss.

GREEN, A.C.J., and THOMPSON, J., concur.