[No. 62222-1.  En Banc.]
Argued May 15, 1996.     Decided January 23, 1997.

DENNIS LEINGANG, *Respondent*, v. PIERCE COUNTY
MEDICAL BUREAU, INC., *Appellant*.

134

*Burgess, Fitzer, Leighton & Phillips, P.S.,* by *Timothy R. Gosselin,* for appellant.

*Leggett & Kram,* by *James F. Leggett,* for respondent.

Guy, J. — In this case, a health care service contractor appeals a trial court's grant of summary judgment in favor of one of its insureds on a Consumer Protection Act cause of action. We find that there is no evidence of an unfair or deceptive act on the part of the health care contractor and reverse the order of summary judgment. We grant summary judgment to the health care service contractor on

the Consumer Protection Act cause of action. The health care service contractor also appeals the trial court's award of attorney fees for the declaratory judgment portion of the insured's action which involved a dispute about coverage under an exclusion in the medical insurance contract. We affirm the trial court's award of attorney fees under the rule announced in *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991) (*Olympic Steamship*). We order the award of reasonable attorney fees for the portion of the action in this court which concerned the award of attorney fees in the declaratory judgment action. We affirm the trial court's order of summary judgment in favor of the health care service contractor on the cause of action for intentional interference with a contract.

## FACTS

In May 1989, Dennis Leingang was injured in an automobile accident. At the time of the accident, Mr. Leingang had medical insurance under a health care service contract which his employer had with Pierce County Medical Bureau, Inc. (PCM). PCM is a "health care service contractor" licensed under RCW 48.44. At the time of the accident, Mr. Leingang also had automobile insurance, including uninsured and underinsured motorist (UIM) coverage, with Farmers Insurance Company. The driver of the other vehicle involved in the accident was underinsured.

The "Exclusions" portion of the PCM medical insurance contract contained the following language:

No benefits will be provided any subscriber . . . for any of the following . . .

. . . .

Benefits to the extent benefits are payable under the terms of any automobile medical, automobile no-fault, underinsured or uninsured motorist or similar contract of insurance, when such contract or insurance is issued to . . . the subscriber

. . . .

Clerk's Papers at 102-03.[1]

In July 1989, Mr. Leingang's attorney wrote to PCM demanding payment of the medical bills incurred due to the accident. PCM responded that it was sending Mr. Leingang a copy of their standard subrogation agreement for his signature and would begin making payment on the medical bills on receipt of that agreement. PCM sent with that letter a subrogation agreement which stated in part:

> The benefits of this contract will be available to a subscriber . . . who is injured by another party. If [PCM] provides benefits under this contract for the treatment of the injury, [PCM] shall (a) be subrogated to the rights of the subscriber . . . (b) have the right to collect damages from the other party, and (c) have a security interest in any damage recoveries from the other party.
>
> . . . If a settlement is made or a judgment is recovered that is equal to or greater than the amount of the other party's "reachable assets," [PCM's] subrogation right shall be limited to the excess of the amount necessary to fully compensate the subscriber . . . .[2]

Clerk's Papers at 22. At the bottom of that subrogation agreement, PCM also stated:

> Quoted below is the contract wording of an exclusion covering all types of automobile insurance.
>
> Benefits to the extent benefits are payable under the terms

---

[1]In another part of the contract, there was also a provision dealing with "subrogation" which allowed PCM to recover some benefits it had paid if the injury was caused by a third party. In accord with Washington law, the contract stated that the subrogation right was limited to the excess of the amount necessary to fully compensate the subscriber.

[2]The parties recognize that this provision is in accord with settled Washington law on an insurer's rights to subrogation. The general rule is that where the insured is entitled to receive recovery for the same loss from more than one source, e.g., the insurer and the tortfeasor, the insurer acquires a right to subrogation only after the insured has been fully compensated for all of the loss. *E.g., Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 754-55, 845 P.2d 334 (1993); *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978). At the time PCM sought reimbursement from the UIM proceeds, the dispute between Mr. Leingang and PCM was not clearly covered by this law because the provision regarding medical benefits and UIM benefits was written as an exclusion from coverage and not a subrogation provision.

of any automobile medical, automobile no-fault, underinsured or uninsured motorist or similar contract of insurance, when such contract or insurance is issued to or on behalf of the subscriber or dependent.

We are calling your attention to this exclusion for in the event we agree to subrogate and any benefits are payable under automobile insurance, we expect full reimbursement to the extent of that payment or benefit received.

Clerk's Papers at 22.

Mr. Leingang refused to sign the agreement. In spite of Mr. Leingang's refusal to sign, PCM paid Mr. Leingang's medical bills. However, PCM did continue to maintain that it had a right to be reimbursed if the UIM carrier subsequently paid Mr. Leingang because there was no coverage to the extent of UIM payment.

After paying Mr. Leingang's medical bills, PCM's attorney wrote a letter to Farmers Insurance, Mr. Leingang's UIM carrier, and to Allstate Insurance, the insurance carrier for the other driver. That letter informed them that PCM was asserting a security interest and subrogation claim against any future settlement or judgment for reimbursement for the medical bills it had paid on behalf of Mr. Leingang.

Mr. Leingang filed an action against the alleged tortfeasors (the dealership that had sold him a defective car and the driver of the other car), their insurers, Farmers Insurance and PCM. In that action, Mr. Leingang sought declaratory relief against PCM, requesting a ruling that PCM was not entitled to be reimbursed for payment of the medical bills from any recovery under the UIM insurance. Mr. Leingang also alleged that PCM tortiously interfered with his contract with Farmers, that PCM's conduct had violated the Consumer Protection Act, RCW 19.86, and that he should recover his emotional distress damages from PCM.

After first disputing the claim, Farmers Insurance ultimately paid the $100,000 limits of the UIM policy into

the registry of the court pending resolution of the issue whether the funds were due directly to Mr. Leingang or to PCM for reimbursement of the medical bills it had already paid.

Mr. Leingang filed a motion for summary judgment asking the trial court to rule that PCM had no claim against the UIM proceeds and was not entitled to be reimbursed the amounts PCM had paid for his medical bills. PCM made a cross motion for summary judgment.

The trial court granted summary judgment in favor of PCM. The trial court held that PCM's exclusion was enforceable. The trial court stated:

> Pierce County Medical has drafted a clear and unambiguous provision which excludes benefits to their subscribers if the same benefits are payable under the terms of any automobile underinsured or uninsured motorist policy provision. There is nothing in statute or judicial decision that would indicate such a provision should not be enforced.

Clerk's Papers at 134. The trial court concluded PCM was entitled to judgment as a matter of law on its right to reimbursement of medical bills from the UIM proceeds even before Mr. Leingang had been fully compensated for all of his damages. The trial court explained that it was fair that PCM had paid the bills initially, but that if the UIM carrier did make payment, then the exclusion in the health care contract would allow reimbursement to PCM.

Mr. Leingang appealed this decision to the Court of Appeals. However, prior to oral argument in that court, this court accepted review of the consolidated cases of *Brown v. Snohomish County Physicians Corp.* and *Hogsett v. Snohomish County Physicians Corp.,* 63 Wn. App. 788, 822 P.2d 336 (1992), which presented the same issue of the enforceability of a UIM exclusion in a health care contract. In the *Brown* and *Hogsett* cases, the trial courts and the Court of Appeals had all held that the exclusions in medical insurance contracts for benefits actually paid by UIM insurance were enforceable exclusions to coverage.

In *Brown v. Snohomish County Physicians Corp.,* 120 Wn.2d 747, 845 P.2d 334 (1993), this court reversed the trial courts' and Court of Appeals' decisions. We held that a health care service contract provision denying coverage to the extent benefits are available to the beneficiary under an underinsured motorist policy violates public policy insofar as the provision denies coverage or medical expenses before the beneficiary is fully compensated for all general and special damages. We concluded that such a provision may be enforced, but only to the extent that it bars double recovery for medical expenses. *Brown,* 120 Wn.2d at 758. In *Brown,* this court weighed the public policy of full compensation for auto accident victims with the policy favoring low cost health care coverage and concluded that the strong public policy favoring full compensation of victims cannot be abrogated simply because the cost of health care service contracts may go up to some degree. *Brown,* 120 Wn.2d at 758. We therefore reversed *Brown* and *Hogsett,* 63 Wn. App. 788, and over-ruled *Snohomish County Physicians Corp. v. Jungaro,* 58 Wn. App. 579, 794 P.2d 76 (1990) to the extent it was inconsistent.

In light of this court's decision in *Brown,* PCM and Mr. Leingang stipulated that their case should be reversed by the Court of Appeals and remanded to the trial court. The Court of Appeals therefore reversed and remanded to the superior court with directions to disburse the funds on deposit there to Mr. Leingang and to resolve the remaining issues.

At the trial court, Mr. Leingang sought attorney fees incurred in the declaratory judgment action under the authority of *Olympic Steamship,* 117 Wn.2d 37. The trial court awarded Mr. Leingang his costs and attorney fees at the trial court and on appeal for the portion of the case which involved the declaratory judgment action.

Mr. Leingang then moved for partial summary judgment on the Consumer Protection Act cause of action. PCM filed a cross motion for summary judgment on the

Consumer Protection Act claim and motions for summary judgment on all of the other claims. The trial court granted Mr. Leingang summary judgment on the Consumer Protection Act cause of action and awarded him damages, treble damages and attorney fees. The trial court granted PCM summary judgment on the actions for outrage, tortious interference with a contract, and infliction of emotional distress. The court found there was no action for "wrongful attachment" but said if anyone was saying there was such a claim, PCM was granted summary judgment.[3]

PCM sought direct review in this court, arguing that (1) the trial court erred in granting attorney fees to Mr. Leingang for the declaratory judgment action, and (2) the trial court erred in granting summary judgment to Mr. Leingang on the Consumer Protection Act cause of action. Mr. Leingang cross appealed, arguing the trial court computed the treble damages award under the Consumer Protection Act claim incorrectly and erred in dismissing the claims for emotional distress.

## ISSUES

1. Did the trial court properly award attorney fees for the declaratory judgment action under the authority of *Olympic Steamship*?

2. Did the trial court err in granting summary judgment on the Consumer Protection Act cause of action? If so, did the trial court err in failing to grant summary judgment in favor of PCM?

3. Did the trial court properly dismiss plaintiff's claims for emotional distress?

## ANALYSIS

We conclude the trial court properly awarded attorney

---

[3]Mr. Leingang's brief to this court contains one sentence mentioning "wrongful attachment." We agree with the trial court that no such action was pursued, and the briefing to this court was insufficient to address the issue.

fees to Mr. Leingang for the declaratory judgment action regarding the exclusion from coverage. However, we hold that the court erred in granting summary judgment in the Consumer Protection Act cause of action and we grant summary judgment to PCM on that cause of action. We therefore do not reach the issue of the proper amount of damages under the Consumer Protection Act. We hold that the trial court correctly dismissed the actions seeking emotional distress damages.

### Attorney Fees for Declaratory Judgment Action

■ Washington generally follows the "American rule" on attorney fees, which provides that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery is permitted by contract, statute, or some recognized ground of equity. *E.g., Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). There are, however, many statutes which allow attorney fees to the prevailing party and a number of grounds of equity which allow for the award of fees. *See* Philip A. Talmadge, *The Award of Attorneys' Fees in Civil Litigation in Washington*, 16 GONZ. L. REV. 57 (1980).

■ In 1991, this court decided *Olympic Steamship*, 117 Wn.2d 37, which held at page 53 that

> an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

*Accord Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 508, 844 P.2d 403 (1993); *Public Util. Dist. No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 815, 881 P.2d 1020 (1994).

In 1994, this court decided *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, in which we clarified the *Olympic Steamship* rule on attorney fees. The *Dayton* case presented the issue whether an insured was entitled to attorney fees incurred in a UIM arbitration proceeding to determine

the *amount of damages* due under an insurance policy. The insurer had conceded coverage but disputed the value of the particular claim. We held that the trial court exceeded its authority in awarding attorney fees to the insured pursuant to the rule established in *Olympic Steamship* and explained:

> This case presents an entirely different set of circumstances. Coverage is not an issue; Farmers accepted coverage. Unlike the insured in *Olympic Steamship*, Mr. Dayton has not compelled Farmers to honor its commitment to provide coverage. Instead, this case presents a dispute over the value of the claim presented under the policy. Such disputes are not properly governed by the rule in *Olympic Steamship*.

*Dayton*, 124 Wn.2d at 280. *See also Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424 (9th Cir. 1995) (the *Olympic Steamship* rule has been read broadly by Washington courts even to include cases in which there is no contractual basis for the awarding of fees; the only articulated limitation to the rule is that no fees are awarded when the insurer does not dispute coverage but merely disputes the value of the claim); *Barney v. Safeco Ins. Co.*, 73 Wn. App. 426, 869 P.2d 1093 (1994) (attorney fees awarded when the insurer litigated the issue whether it could offset against a UIM recovery the amount paid to the insured under the medical payments coverage); *Kroeger v. First Nat'l Ins. Co.*, 80 Wn. App. 207, 211, 908 P.2d 371 (1995) (coverage concerns whether the insurer has a duty to pay while a claim issue concerns how extensive damages were), *review denied*, 129 Wn.2d 1002 (1996).

PCM argues that, under *Dayton,* attorney fees are not awardable in this case because PCM did not deny coverage but merely maintained that it was entitled to recover the amount it paid from Mr. Leingang's UIM carrier. We disagree.

In the present case, PCM argued throughout the case that Mr. Leingang did not have *coverage* for any medical bills which his own UIM carrier would ultimately pay.

The entire case concerned the validity of an exclusion from coverage. PCM did agree to pay the medical bills because the UIM carrier had not yet paid, but it always maintained that the coverage under the contract was excluded to the extent UIM insurance subsequently paid any of the bills. PCM told the trial court that "PCM contracts *exclude benefits* which are ultimately paid by their subscriber's automobile uninsured or underinsured carrier. . . . PCM [is] seeking reimbursement of the funds it paid out, *based upon a specific exclusion in its contract* . . . for benefits paid by an underinsured carrier." Clerk's Papers at 50 (emphasis added). PCM also argued to the trial court:

> PCM's right to reimbursement is based upon the exclusion provisions of the Contract providing benefits to Plaintiff. . . . The monthly rates charged by PCM to its subscribers are premised on exclusion provisions such as this. PCM has paid the claims to assist Plaintiff during the period prior to the UIM recovery.
>
> The exclusion provision does not address subrogation, which is a separate provision of the Contract relating to re-coveries from responsible third parties. In fact, PCM's entitle-ment is by virtue of the exclusion pertaining to first party recovery only. *Simply put, Plaintiff's claims are not covered under the Contract where he is paid or will be paid by a UIM carrier.*

Clerk's Papers at 53 (emphasis added). PCM repeatedly argued that there was no coverage under its contract for any medical bills it paid that would be paid by a UIM policy. We cannot accept PCM's current argument to this court that this case did not involve a coverage dispute.

The medical insurance policy itself also supports the insured's position that the issue litigated was a coverage issue. The insurer relied on a provision in the policy which is in the "exclusion" section of the contract.

Previous case law also indicates that the declaratory judgment action here was a case concerning insurance coverage and not just involving the value of a claim. In

*Brown,* the exclusions at issue were in all relevant ways the same as the exclusions at issue in the present case. This court in *Brown* explained that:

> There is a question in this case whether the provisions are in fact "exclusions". Resolution of the question of the precise nature of the clauses is not necessary to our disposition of these cases. Regardless of how they are characterized, *they act to limit coverage* contrary to public policy.

*Brown,* 120 Wn.2d at 759 n.2 (emphasis added). Since the exclusions to coverage here are the same as the exclusions in the *Brown* case, it follows that this case also is a case which involves an issue of the limit of coverage and hence comes under the rule of *Olympic Steamship.*

Recently, this court decided *McGreevy v. Oregon Mut. Ins. Co.,* 128 Wn.2d 26, 904 P.2d 731 (1995), in which we considered whether the *Olympic Steamship* rule on attorney fees should be overruled. We affirmed the "central holding" of *Olympic Steamship* that

> [a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue.

*McGreevy,* 128 Wn.2d at 28.

The award of attorney fees in *McGreevy,* in light of the facts of that case, supports the trial court's award of attorney fees in the present case. In *McGreevy,* the insurer offered $100,000 of the uninsured motorist coverage, but the widow of a deceased driver argued she could "stack" the benefits and recover four times that amount. The declaratory judgment action was brought on the issue whether stacking was allowed under the applicable UIM policy. The insurer admitted there was some coverage, but the insured asserted there was a different amount of coverage available under the policy. We found in favor of the insured and awarded her attorney fees. In *McGreevy,* we referred to *Dayton* and explained:

In a subsequent decision of this court, we have held that the rule articulated in *Olympic Steamship* is applicable where the insurer forces the insured to litigate questions of coverage, but that the rule does not apply in instances where the controversy is merely over the amount of, or the denial of, a claim. *See Dayton v. Farmers Ins. Group,* 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994).

*McGreevy,* 128 Wn.2d at 32 n.4. Some confusion may have been caused by the language that "the rule does not apply in instances where the controversy is merely over the . . . denial of . . . a claim," because a claim can be denied when there is no coverage. If a claim is denied on the basis of an alleged lack of coverage and a court later determines there is coverage, then the case would fall under the rule of *Olympic Steamship.* The holding of *Olympic Steamship* and *Dayton* is that an insured is entitled to attorney fees if the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim. The present case is like the *McGreevy* case in that the insurer admitted there was some coverage but disputed the scope of the coverage. Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which "the extent of the benefit provided by an insurance contract" is at issue. *McGreevy,* 128 Wn.2d at 33 (citing *Estate of Jordan,* 120 Wn.2d 490 and *Public Util. Dist. No. 1,* 124 Wn.2d 789).

The real dispute in this case went to the issue of coverage. If the exclusion was enforceable, then there was no coverage under the medical policy and the insurer was entitled to be repaid the bills it paid to the extent that UIM benefits were available. The dispute had nothing to do with the degree of Mr. Leingang's injuries or the necessity for or amount of the bills; it had to do only with whether the medical insurance contract covered the bills. Although PCM paid Mr. Leingang's bills, it then forced him to litigate the issue of coverage by asserting an interest against the proceeds of his UIM policy proceeds. We therefore conclude that the trial court properly awarded

attorney fees for the part of the suit which determined the issue of coverage.

■ Mr. Leingang also requests attorney fees on appeal. Since we conclude that the trial court correctly awarded attorney fees for the declaratory judgment portion of the action, Mr. Leingang is also entitled to attorney fees on appeal to this court for the portion of the action which pertains to the issue of the attorney fees under *Olympic Steamship*. *McGreevy*, 128 Wn.2d at 40; *Olympic Steamship*, 117 Wn.2d at 53; RAP 18.1.

PCM argues that even if the fees are appropriate under the rule of *Olympic Steamship*, Mr. Leingang may not be awarded attorney fees for the appeals portion of the declaratory judgment action because they were not requested in the briefing on appeal to the Court of Appeals as required by RAP 18.1. We disagree. When the appeal was filed and briefed, *Olympic Steamship* had not yet been decided and there was no legal basis for a request for attorney fees. After *Brown* was decided, and the stay lifted, Mr. Leingang filed a motion on the merits to the Court of Appeals requesting attorney fees for the declaratory judgment action in the trial court and on appeal. The insurer responded that any request for "costs" was premature. Without deciding the motion on the merits, the Court of Appeals filed an order indicating the parties had stipulated to reverse and remand the case to the superior court, and it remanded to the trial court to disburse the funds on deposit to Mr. Leingang and to "resolve the remaining issues." Under the facts here, we conclude that Mr. Leingang should not be foreclosed from receiving his fees for the appellate portion of the declaratory judgment action on procedural grounds. *See* RAP 1.2(a).

Whether attorney fees are recoverable by an insured under *Olympic Steamship* for a declaratory judgment action, and whether attorney fees and punitive damages are recoverable under a Consumer Protection Act cause of action, involve very different inquiries. All that is necessary to recover attorney fees under the former is that the

insurer compels the insured to assume the burden of legal action to obtain the full benefit of the insurance contract. *McGreevy*, 128 Wn.2d at 32 (citing *Olympic Steamship*, 117 Wn.2d at 53). In such a case, the insured, as a matter of equity, will be awarded attorney fees so that the insured is made whole. *McGreevy*, 128 Wn.2d at 40. It is not necessary to show bad faith on the part of the insurer in order to receive attorney fees under *Olympic Steamship*. It is only necessary that the insurer cause an insured to suffer the costs of litigation in order to compel an insurer to honor its commitment to provide coverage. *McGreevy*, 128 Wn.2d at 37; *Olympic Steamship*, 117 Wn.2d at 52-53.

Consumer Protection Act Cause of Action

■ The Consumer Protection Act provides that unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. RCW 19.86.020. Insureds may bring a private action against their insurers for breach of the duty of good faith under the Consumer Protection Act. *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 394, 715 P.2d 1133 (1986); RCW 19.86.090; *see also Industrial Indem. Co. of N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 792 P.2d 520, 7 A.L.R.5th 1014 (1990); RCW 19.86.170. The parties do not argue that PCM, as a health care service contractor, should be treated any differently than other insurers with regard to the Consumer Protection Act.

■ To prevail in a private action brought under the Consumer Protection Act, RCW 19.86.090, the plaintiff must establish that: (1) the defendant has engaged in an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) the plaintiff has suffered injury in his or her business or property, and (5) a causal link exists between the unfair or deceptive act and the injury suffered. *Kallevig*, 114 Wn.2d at 920-21; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

■ The issue here is whether PCM committed an

"unfair or deceptive act." Whether a party in fact committed a particular act is reviewable under the substantial evidence test. However, the determination of whether a particular statute applies to a factual situation is a conclusion of law. Consequently, whether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law. *Keyes v. Bollinger,* 31 Wn. App. 286, 289, 640 P.2d 1077 (1982); *Roger Crane & Assocs., Inc. v. Felice,* 74 Wn. App. 769, 780, 875 P.2d 705 (1994); *Estate of Hall v. HAPO Credit Union,* 73 Wn. App. 359, 365, 869 P.2d 116, *review denied,* 124 Wn.2d 1026 (1994); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.,* 64 Wn. App. 553, 560, 825 P.2d 714, *review denied,* 120 Wn.2d 1002 (1992); *Gingrich v. Unigard Sec. Ins. Co.,* 57 Wn. App. 424, 433, 788 P.2d 1096 (1990). Therefore, since there is no dispute of facts as to what the parties did in this case, whether the conduct constitutes an unfair or deceptive act can be decided by this court as a question of law.

The first element of the five-part test may be established by showing that the act constitutes a per se unfair trade practice. *Saunders v. Lloyd's of London,* 113 Wn.2d 330, 344, 779 P.2d 249 (1989). This court has also held that an insurer breaches its duty by acting without reasonable justification in handling an insured's claim. *Villella v. PEMCO,* 106 Wn.2d 806, 821, 725 P.2d 957 (1986); *see also Kallevig,* 114 Wn.2d at 917; *Gingrich,* 57 Wn. App. at 433.

The trial court, in granting the motion for summary judgment, did not give any indication what conduct on the part of PCM constituted an unfair or deceptive act. Mr. Leingang argues that PCM violated regulations promulgated by the Insurance Commissioner, specifically WAC 284-30-330(1), (5), (6), (7), (12); WAC 284-30-350(5); WAC 284-30-390(2) and WAC 284-44-040(7), (9). Mr. Leingang also argues that because the UIM exclusion was not affirmatively approved by the Insurance Commissioner, or disapproved, it was an unfair trade practice to include it in the insurance contract. Mr. Leingang also argues that the use of the automobile insurance exclusion

was unfair in that the insurer failed to make a reasonable investigation of the legal validity of the exclusion. None of these arguments is factually or legally supported in this case.

1. Insurance Regulations

RCW 48.30.010(1) prohibits any insurer from engaging in unfair or deceptive acts or practices in the conduct of the insurance business, as such acts or practices are defined in RCW 48.30.010(2). *Kallevig*, 114 Wn.2d at 922. RCW 48.30.010(2) provides:

> In addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation . . . define other . . . acts and practices . . . reasonably found by the commissioner to be unfair or deceptive.

Thus, the Legislature gave the Insurance Commissioner the rule-making authority under RCW 48.30.010(2) to define unfair or deceptive acts or practices in the business of insurance. Mr. Leingang argues PCM violated a number of those regulations contained in WAC 284-30. Generally, in Consumer Protection Act actions against insurers, committing any of the acts defined in WAC 284-30-330 constitutes a per se unfair trade practice, and a single violation of WAC 284-30-330 will be sufficient to constitute an unfair or deceptive act. *Kallevig*, 114 Wn.2d at 923; *Starczewski v. Unigard Ins. Group*, 61 Wn. App. 267, 272, 810 P.2d 58, *review denied*, 117 Wn.2d 1017 (1991). However, these regulations specifically provide that they do not apply to "health care service contractors, as defined in RCW 48.44.010." WAC 284-30-320(4), (5). PCM is such a health care service contractor. While PCM convincingly argues that it did not violate any of the Insurance Commissioner's regulations, we need not address that issue since these regulations do not apply in this case.

Mr. Leingang is apparently relying on a statement this court made in *Brown* in order to argue that the regulations in WAC 284-30 apply to health care service contrac-

tors. In *Brown,* we explained that while there was some question about the extent to which insurance law applies to health care service contracts, *compare* RCW 48.44.020(1) *with* RCW 48.44.309, for the purposes of that case, the court agreed with the parties that "general rules respecting insurance policies should be applied in resolving the public policy issue." *Brown,* 120 Wn.2d at 753. However, in *Brown,* we used the common-law rules of interpretation generally applicable to insurance contracts to decide if the exclusion violated the public policy behind the UIM statutes. We did not apply insurance regulations which specifically provide that they do not apply to health care service contractors.

Instead of the regulations found in WAC 284-30, a different statute and set of corresponding regulations apply to health care service contractors. The health care services statute, chapter 48.44, authorizes the Insurance Commissioner to promulgate regulations governing health care service contractors. RCW 48.44.050, .020(2)(g). Pursuant to the authority conferred in that statute, the Insurance Commissioner has promulgated regulations contained in the Washington state health care service contractor regulation, WAC 284-44. WAC 284-44-010.

Mr. Leingang contends that PCM violated two of those regulations. The general rule is that violations of insurance regulations are subject to the Consumer Protection Act. RCW 19.86.170; *Kallevig,* 114 Wn.2d at 922. PCM does not argue that any different rule should apply to health care service contractors. PCM argues that there has been no violation of the health care service contractor regulations. We agree.

Mr. Leingang contends that PCM violated two regulations, WAC 284-44-040(7) and (9). Neither of those regulations applies to the facts of this case. WAC 284-44-040(7) provides:

> No contract shall contain any provision that unreasonably restricts or delays the payment of benefits payable under the contract. Delays are not justified because the expenses

incurred, or the services received, resulted from an act or omission of a third party.

There was no provision in the health care contract which provided for a delay in payments. The issue was whether the disputed payments were "payable under the contract." As the contract was written, the medical bills were not covered to the extent they were available from a UIM carrier. In any event, PCM did pay all of Mr. Leingang's medical bills within a relatively short time, and only then did it contend that it was entitled to be repaid if and when the UIM carrier paid the benefits of that policy to Mr. Leingang.

WAC 284-44-040(9) provides:

> No contract . . . shall contain any provision having the effect of coordinating benefits with other health care service contracts, health maintenance agreements, or disability insurance policies, except that group contracts may provide for coordination of benefits pursuant to chapter 284-51 WAC, and except that any contract may provide for coordination with respect to governmental programs.

The UIM exclusion at issue here does not attempt to coordinate benefits with a health care service contract or health maintenance agreement or disability insurance policy.

We conclude that PCM did not violate any insurance statutes or regulations which apply to health care service contractors.

2. Approval or Disapproval by the Insurance Commissioner

Mr. Leingang also argues that because the UIM exclusion was not affirmatively approved by the Insurance Commissioner, it was an unfair trade practice to include it in the insurance contract. He also argues that this court in the *Brown* case noted that the Insurance Commissioner disapproved of such UIM exclusions and that therefore the use of the exclusion by PCM was an unfair trade

practice. The record shows that the Insurance Commissioner did not disapprove of PCM's contract and that it did not give notice to PCM or to the health care insurance industry that it disapproved of such exclusions.

At the time the contracts under consideration in this case were filed, the Insurance Commissioner had the authority to disapprove a health care contract, but there was no statute or regulation requiring affirmative approval of such contracts. RCW 48.44.020(1), (2) and .070(1).

The issue was quite different in *Brown* in that we were considering whether the use of the exclusion violated public policy, given the intent of the UIM statute. Hence, the opinion of the Insurance Commissioner on that question was relevant. Here, the Insurance Commissioner's approval, disapproval or silence went to the issue of whether the medical insurer committed an unfair or deceptive trade practice. Absent any communication from the Insurance Commissioner that such an exclusion was disapproved, we cannot conclude that the Commissioner's silence after PCM filed its contract gives rise to an unfair or deceptive trade practice.

■ While an opinion of the Insurance Commissioner is afforded substantial weight, whether an insurance contract exclusion violates public policy is ultimately a question of law for the courts. *See Omega Nat'l Life Ins. Co. v. Marquardt*, 115 Wn.2d 416, 422-23, 799 P.2d 235 (1990); *Brown*, 120 Wn.2d at 760; *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984). Our consideration of the Insurance Commissioner's opinion as to the validity of the exclusion to determine if it violated public policy is quite different than using the uncommunicated opinion of the Commissioner to find an insurer liable for punitive damages for an unfair or deceptive act in violation of the Consumer Protection Act. There is no evidence that PCM ignored any communication by the Insurance Commissioner.

3.  Justification for Denial of Coverage

Mr. Leingang argues that PCM failed to make a good

faith investigation of the legal validity of the UIM exclusion, and that its reliance on an exclusion which ultimately was determined to violate public policy was an unfair or deceptive act in violation of the Consumer Protection Act.

██ ██ Mr. Leingang correctly argues that an insurer's denial of coverage, without reasonable justification, constitutes an unfair act under the Consumer Protection Act. *Kallevig*, 114 Wn.2d at 917. However, a denial of coverage, although incorrect, based on reasonable conduct of the insurer does not constitute an unfair trade practice. *Villella v. PEMCO*, 106 Wn.2d 806, 821, 725 P.2d 957 (1986); *accord Saunders v. Lloyd's of London*, 113 Wn.2d at 345; *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988); *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 863 P.2d 564 (1993); *Smith v. Ohio Cas. Ins. Co.*, 37 Wn. App. 71, 74, 678 P.2d 829 (1984); *Ranes v. Paul Revere Life Ins. Co.*, 32 F.3d 1393 (9th Cir. 1994). Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law. *Perry v. Island Sav. & Loan Ass'n*, 101 Wn.2d 795, 810, 684 P.2d 1281 (1984); *Starczewski*, 61 Wn. App. at 273.

The question then is whether PCM had a reasonable justification for relying on the exclusion which was ultimately determined to be unenforceable until an insured had received all damages.

As noted above, Mr. Leingang has cited no statute which prohibited the use of such an exclusion. PCM was relying on a reasonable interpretation of existing law to contend that the exclusion was valid. Prior to this court's decision in *Brown*, at least four trial courts' and two Court of Appeals' decisions in Washington had held that the UIM exclusion was clear and enforceable and not against public policy. *Dunn v. King County Med. Blue Shield of Wash., Inc.*, No. 89-2-16917-7 (Super. Ct. Dec. 15, 1989); *Snohomish County Physicians Corp. v. Jungaro*, No. 88-2-05338-1 (Super. Ct. June 22, 1989), *aff'd*, 58 Wn. App. 579,

794 P.2d 76 (1990); *Brown v. Snohomish County Physicians Corp.,* No. 90-2-03268-8 (Super. Ct. Nov. 28, 1990), and *Hogsett v. Snohomish County Physicians Corp.,* No. 90-2-02048-5 (Super. Ct. Feb. 11, 1991), *aff'd,* 63 Wn. App. 788, 822 P.2d 336 (1992), *rev'd,* 120 Wn.2d 747, 845 P.2d 334 (1993). In *Jungaro,* the Court of Appeals found that the Insurance Commissioner had reviewed and approved of the UIM exclusion in health care service contracts. *Jungaro,* 58 Wn. App. at 585. The Court of Appeals in *Brown* had also found that the Insurance Commissioner had not disapproved of the UIM exclusion in such contracts. *Brown,* 63 Wn. App. at 797. Additionally, there was authority from another jurisdiction which had upheld a similar exclusion. *Medical-Dental Serv., Inc. v. Boroo,* 92 Idaho 328, 442 P.2d 738, 36 A.L.R.3d 458 (1968). PCM was advancing an arguable interpretation of existing law.

Mr. Leingang also asserts that PCM failed to make a reasonable investigation of the validity of the UIM exclusion because it failed to request a legal opinion from the Insurance Commissioner. Mr. Leingang cites no law to support the proposition that a health care contractor has such a duty. Neither the statutes nor the regulations impose on an insurer an affirmative duty to request a legal opinion from the Insurance Commissioner on the validity of a given exclusion in a health care service contract. The duty is to file the policy under the applicable statutes and regulations. We conclude there is no evidence to support a finding of an unfair or deceptive act.

## Tortious Interference with Contract

Mr. Leingang maintains that the trial court erred in dismissing on summary judgment his claims for "emotional distress" based upon a claim of tortious interference with a contract. He argues that PCM was guilty of interference with his contract with his UIM carrier because PCM informed the UIM insurer of its claim for reimbursement from the UIM proceeds for the medical bills PCM had paid. This notice resulted in the UIM car-

rier depositing the UIM proceeds with the clerk of the superior court pending resolution of the enforceability of the UIM exclusion in the health care contract. The proceeds stayed in the registry of the court while Mr. Leingang appealed the trial court's order that PCM was entitled to the proceeds and while his appeal was stayed in the Court of Appeals pending this court's determination of the issue in the *Brown* case.

A claim for tortious interference with a contractual relationship or business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992); *Roger Crane & Assocs.*, 74 Wn. App. at 777-78. The purposeful interference denotes purposefully improper interference. *Schmerer v. Darcy*, 80 Wn. App. 499, 505, 910 P.2d 498 (1996). Intentional interference requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship. *Schmerer*, 80 Wn. App. at 505. Exercising in good faith one's legal interests is not improper interference. *Schmerer*, 80 Wn. App. at 506 (citing RESTATEMENT (SECOND) OF TORTS § 773 (1977)). There is no evidence in the record of an improper purpose for PCM's actions or of improper means being used. When Mr. Leingang refused to sign the subrogation agreement, PCM paid his medical bills and sought reimbursement in court. PCM was merely asserting an arguable interpretation of existing law. The trial court correctly dismissed the claims for tortious interference with a contract.

Mr. Leingang also appears to argue that emotional distress damages may be recoverable under the Consumer Protection Act. As explained above, Mr. Leingang does

not have a viable cause of action under RCW 19.86. Additionally, we have held that personal injuries, including mental pain and suffering, are not compensable under the Consumer Protection Act. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993).

## CONCLUSION

We affirm the trial court's award of attorney fees for the declaratory judgment action, and we order an award of reasonable attorney fees for the part of the action in this court which concerned the award of attorney fees under *Olympic Steamship*. RAP 18.1. We reverse the trial court's grant of summary judgment against PCM under the Consumer Protection Act cause of action and grant summary judgment in favor of PCM on this cause of action. We affirm the trial court's grant of summary judgment dismissing the remaining causes of action.

DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, MADSEN, and TALMADGE, JJ., concur.

SANDERS, J. (dissenting in part) — I dissent from the majority opinion insofar as it reverses the trial court's award of summary judgment to Leingang on his Consumer Protection Act (CPA) and affirms dismissal of his tortious interference with contract claims. I concur with the majority that Leingang should recover his reasonable attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991); however, I would also award Leingang reasonable attorney fees under the CPA.

### I.

#### CONSUMER PROTECTION ACT

Washington's Consumer Protection Act broadly provides:

Unfair methods of competition and unfair or deceptive acts

or practices in the conduct of any trade or commerce are hereby declared unlawful.

RCW 19.86.020. The Legislature stated the purpose of the act is to complement a related body of federal law, and specifically provides "[T]his act shall be liberally construed that its beneficial purposes may be served." RCW 19.86 .920.

RCW 19.86.090 further provides that any person injured in his or her business or property through violation of the act "or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation" of the act may bring a civil suit to recover actual damages, reasonable attorney fees, and treble damages.

The record discloses several independent bases for imposing CPA liability against Pierce County Medical (PCM). These include:

1. drafting and enforcing a contractual provision which excludes benefits to the extent they are paid under an underinsured motorist policy,

2. demanding that Leingang execute an agreement granting PCM a security interest against underinsured motorist (UIM) proceeds as a condition precedent to the receipt of medical insurance benefits, and

3. overtly interfering with Leingang's right to recover contracted UIM payments from his first-party auto insurer, Farmers Insurance Company.

I would affirm the trial court's CPA judgment favoring Leingang against Pierce County Medical on all three counts although any one of them would suffice to sustain the trial court. I would certainly never do as the majority has done: not only reverse Leingang's summary judgment but actually award summary judgment to PCM to dismiss this claim.

1.   PCM violated the CPA by drafting and enforcing an unlawful policy provision.

The invalid provision at issue is quoted in full on page

138-39 of the majority opinion and essentially provides that no benefits will be provided to the extent that they are payable under any automobile UIM coverage. Clerk's Papers (CP) at 102-03. The illegality of such an exclusion under similar facts was established as a matter of law in *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 845 P.2d 334 (1993), which held such exclusion is inconsistent with the underinsured motorist coverage mandate codified in RCW 48.22.030.

Essentially the majority attempts to avoid the necessary legal conclusion that the CPA has been violated by claiming that the law was not well settled on this point as of the date the PCM contract was executed or enforced against its insured. To justify its result the majority crafts a hybrid rule drawn from two distinguishable lines of cases.

First, it relies on *Perry v. Island Sav. & Loan Ass'n*, 101 Wn.2d 795, 684 P.2d 1281 (1984) to support the broad proposition that acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the CPA. At issue in *Perry* was the enforceability of a due-on-sale clause and whether a *lender's* attempt to enforce the clause violated the CPA. The court held that the clause was unenforceable but that there was no CPA violation since the lender attempted to enforce it in good faith under an arguable interpretation of existing law.

However, this broad rule has never been applied to *insurers* who are held to a higher fiduciary standard of good faith which " 'implies more than the "honesty and lawfulness of purpose" which comprises a standard definition of good faith.' " *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 36, 904 P.2d 731 (1995) (quoting *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385-86, 715 P.2d 1133 (1986)). An insurer's fiduciary duty to act in good faith "is fairly broad and may be breached by conduct short of intentional bad faith or fraud." *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 916-17, 792 P.2d 520, 7

A.L.R.5th 1014 (1990) (citing *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 73, 659 P.2d 509 (1983) (quoting *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 173-74, 473 P.2d 193 (1970)), *adhered to as modified*, 101 Wn.2d 830, 683 P.2d 186 (1984)); *Whistman v. West Am.*, 38 Wn. App. 580, 584-85, 686 P.2d 1086 (1984); *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.*, 37 Wn. App. 1, 11, 680 P.2d 409 (1984)). The rule announced in *Perry*, 101 Wn.2d 795, was never subjected to scrutiny under the higher good faith standard in the insurance context.[4]

Second, the majority misapplies the line of cases which support the proposition that "a denial of coverage, although incorrect, based on reasonable conduct of the insurer does not constitute an unfair trade practice." Majority at 155. None of the cases cited by the majority dealt with the reasonableness of an insurer's subjective opinion of the *lawfulness* of its actions. Rather, these cases dealt with the reasonableness of factual investigation or policy interpretation. For example, an insurer's factual investigation of whether a particular loss is of a type covered[5] or the reasonableness of the insurer's policy interpretation.[6] Since "[i]gnorance of the law [is] not excusable, although ignorance of a fact often is," *Noyes v. Parsons*, 104 Wash. 594, 600, 177 P. 651 (1919), the majority incorrectly applies a mistake of fact rule to a mistake of law issue.

The majority concedes, "an insurer's denial of coverage,

---

[4]The only case which has held that an insurer's actions taken in reliance on an arguable interpretation of law does not amount to a CPA violation, *Starczewski v. Unigard Ins. Group*, 61 Wn. App. 267, 810 P.2d 58, *review denied*, 117 Wn.2d 1017, 818 P.2d 1099 (1991), is of questionable utility since the *McGreevy* court pronounced the higher good faith standard for insurers after *Starczewski* was decided. *Starczewski* was a Court of Appeals decision argued pro se.

[5]*Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 725 P.2d 957 (1986) (insurer acted reasonably in determining that damage was from earth movement and therefore not covered under fire insurance policy); *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989) (insurer acted reasonably in determining that policy had expired).

[6]*Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988); *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 863 P.2d 564 (1993); *Smith v. Ohio Cas. Ins. Co.*, 37 Wn. App. 71, 678 P.2d 829 (1984).

without reasonable justification, constitutes an unfair act under the Consumer Protection Act." Majority at 155 (citing *Kallevig*, 114 Wn.2d at 917). It is never "reasonable" to violate the law. Insurers have never had immunity to liability for mistakes of "arguable" law, and the policy provision at issue[7] is void as a matter of law as against public policy, *Brown*, 120 Wn.2d 747. PCM must bear the burden of its mistakes of law. That PCM attempted to enforce the policy provision before *Brown* was decided is irrelevant since "there is no 'retroactive' effect of the court's construction of a statute; rather, once the court has determined the meaning, *that is what the statute has meant since its enactment.*" *State v. Darden*, 99 Wn.2d 675, 679, 663 P.2d 1352 (1983) (quoting *Johnson v. Morris*, 87 Wn.2d 922, 927-28, 557 P.2d 1299 (1976)).

> 2. PCM violated the CPA by frustrating Leingang's recovery of UIM benefits.

In July 1986, after his May accident, Leingang asked his medical insurer, PCM, to pay his resulting medical bills. PCM told Leingang it would not pay any benefits unless Leingang signed a "subrogation" agreement. This agreement would not only allow PCM to proceed in subrogation against the tortfeasor but also mentioned the insurer's expectation that its insured provide "full reimbursement" from UIM benefits, CP at 22, implying it had a right to such reimbursement. Execution of an agreement imposing upon Leingang a duty to reimburse UIM payments was not, however, required by the insurance policy as a condition precedent to payment of benefits to Leingang even if the exclusion clause was valid.[8]

Leingang rightfully refused. PCM paid his medical bills anyway but nevertheless contacted Leingang's underin-

---

[7]*See* Majority at 138.

[8]PCM admitted in its summary judgment response that "subrogation case law and principles are totally inapplicable to PCM's right to recovery of its funds from the proceeds of the UIM policy," and further argued "PCM's entitlement is by virtue of the exclusion pertaining to first party recovery only." CP at 53.

sured motorist (UIM) carrier, Farmers, asserting PCM's "security interest and subrogation claim" against the UIM proceeds even though the proposed agreement was refused by the insured and there was no other arguable legal basis for the claim of security.

PCM demanded from Farmers:

> When this case is concluded either by way of agreed settlement between the parties, or by way of final judgment, Pierce County Medical hereby notifies you that it requires that you protect *its interest* in connection with this claim. Should you fail to name Pierce County Medical on your settlement draft to the extent of *its interest* or should you otherwise fail to protect *this interest* by issuing a settlement draft, Pierce County Medical will look to your office to indemnify it for any loss . . . .

CP at 321 (emphasis added).

Although the letter was addressed to Farmers (Leingang's first party liability and UIM carrier) as well as Allstate (the third party liability carrier), its message to Farmers was: (1) PCM had a security interest and legal right to directly recover a portion of Leingang's UIM benefits from Farmers and (2) if Farmers failed to directly pay PCM, or at least withhold the proceeds from Leingang, PCM would proceed directly against Farmers to recover the amount in question. PCM made up its own rules as it went along.[9] As a predictable consequence of this demand, Farmers withheld all UIM payments due Leingang, depositing same in the registry of the court, thus preventing its own insured from enjoying the benefits of his UIM

---

[9]In its letter of August 17, 1989 to Farmers Insurance in which it gave its notice of alleged security interest/subrogation claim, PCM cited *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 4 Wn. App. 49, 480 P.2d 226 (1971); 16 GEORGE J. COUCH, COUCH ON INSURANCE § 61:201 (2d rev. ed. 1982); and D.L. Buckner, Annotation, *Rights and Remedies of Property Insurer as Against Third-Person Tortfeasor Who Has Settled With Insured*, 92 A.L.R.2d 102, 124 (1963). All three deal with whether a settlement between an insured and a tortfeasor extinguishes the insurer's subrogation right vis-a-vis the tortfeasor. Therefore, the cited authorities do not support the proposition that PCM had any claim against UIM benefits. Moreover, 16 COUCH ON INSURANCE § 45:665, at 226 (2d rev. ed. 1982) states that "since subrogation is an equitable right, it will not be granted to a collision insurer seeking to succeed to the insured's rights under an underinsured motorist clause."

coverage while the litigation dragged on at considerable expense for another three years. PCM put enormous, and wrongful, financial pressure on its own insured to yield to PCM's demands for repayment of funds previously paid notwithstanding (1) the illegal exclusion and (2) the absence of a lawful security interest in the UIM proceeds. This conduct violated the CPA.

> [T]o prevail in a private CPA action . . . a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*; 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

PCM's actions *were* unfair and/or deceptive. First, it was unfair to enforce an unlawful policy exclusion. Second, even if the exclusion clause were not unlawful (although it was, *see Brown*, 120 Wn.2d 747), the contract of insurance between PCM and Leingang, while allowing for a right of subrogation against the third party tortfeasor, CP at 82, allowed no "security interest" against UIM proceeds to which the insured would otherwise be entitled from his own first party carrier.[10]

Had PCM refrained from interfering with the relationship between Leingang and Farmers and simply sued Leingang to recover what PCM thought he owed it, the act of seeking a judicial remedy might not have been either unfair or deceptive; however, that is not the record before us.

---

[10]PCM could only be "subrogated" to Leingang's rights against the third party tortfeasor, not his own UIM insurer. *See Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 340, 831 P.2d 724 (1992); *Paulsen v. Department of Soc. & Health Servs.*, 78 Wn. App. 665, 668, 898 P.2d 353 (1995), *review denied*, 128 Wn.2d 1010, 910 P.2d 481 (1996). *See also Automobile Club Inter-Ins. Exch. v. Farmers Ins. Co.*, 646 S.W.2d 838 (Mo. Ct. App. 1982) (insurer has no right of recovery against third party other than tortfeasor notwithstanding fact that insured had right of recovery from third party); *Motors Ins. Corp. v. Surety Ins. Co.*, 243 S.C. 487, 134 S.E.2d 631 (1964) (same); *Thaxton v. Travelers Indem. Co.*, 555 S.W.2d 718 (Tenn. 1977) (same); *Bobbitt v. Shelby Mut. Ins. Co.*, 209 Va. 37, 161 S.E.2d 671 (1968) (same).

The other prongs of the CPA violation are easily established. "Trade or commerce" includes the insurance industry and the public has per se interest in the business of insurance. *Hangman Ridge Training Stables, Inc.*, 105 Wn.2d at 791 (citing RCW 48.01.030). Leingang was damaged by PCM's conduct, which caused a three-year delay in payment of UIM benefits from Farmers and forced him to proceed through litigation to obtain control of his own property.

In summary, PCM violated the Consumer Protection Act by (1) drafting and enforcing an unlawful policy provision; (2) conditioning payment on execution of a security interest agreement, and (3) asserting a legally unjustified security interest against Leingang's UIM insurer, causing it to withhold policy benefits for approximately three years. I would therefore affirm the trial court insofar as it awarded summary judgment to Leingang against PCM on his Consumer Protection Act claim, award reasonable attorney fees to him under the CPA, and then consider whether the trial court appropriately applied the treble damage statute.[11]

## II.

### PCM TORTIOUSLY INTERFERED WITH LEINGANG'S CONTRACTUAL RELATION WITH HIS UIM INSURER, FARMERS

As previously noted, the trial court dismissed Leingang's claim against PCM for improperly interfering with his contractual relationship with his UIM carrier, Farmers, on summary judgment. The majority of this court affirms that dismissal.

The facts are undisputed. PCM deliberately contacted Leingang's UIM insurer and then misrepresented that (1) it had security interest against Leingang's UIM benefits (2) to secure performance of an invalid policy exclusion.

---

[11]Given the majority's resolution of the CPA claim against Leingang in favor of PCM, a discussion of the treble damage issue is unnecessary.

The majority erroneously affirms the dismissal of Leingang's tortious interference claim by misconstruing the "improper purpose" or "improper means" element of this tort to require something akin to subjective *ill will*. To the contrary, our authority, the RESTATEMENT (SECOND) OF TORTS (upon which the majority relies), as well as precedent from other jurisdictions, demonstrates subjective wrongful intent is not required to establish this element.

Prior to 1989, only four elements were necessary to prove tortious interference with contract: (1) a valid contract or business expectancy; (2) knowledge of such by the defendant; (3) intentional interference causing breach of the contract or expectancy; and (4) resulting damages. *Pleas v. City of Seattle*, 112 Wn.2d 794, 800, 774 P.2d 1158 (1989) (citing *Calbom v. Knudtzon*, 65 Wn.2d 157, 162-63, 396 P.2d 148 (1964)). " 'Ill will, spite, defamation, fraud, force, or coercion, on the part of the interferor, [were] not essential ingredients . . . .' " *Pleas*, 112 Wn.2d at 800. This rule was not only consistent with the first RESTATEMENT but with most precedent of the time. *Id.* at 802.

In 1989 the *Pleas* court added a fifth element, requiring that the defendant interfere *either* for the improper purpose of harming the plaintiff *or* with wrongful means which in fact cause injury to plaintiff's contractual or business relationships. *Id.* at 804-05. The improper objective requirement was taken from the RESTATEMENT (SECOND) OF TORTS, which included this additional element out of concern that too little was required of the plaintiff when the burden was on the defendant to prove that the interference was justified. *Pleas*, 112 Wn.2d at 802.

The majority's reliance solely on the RESTATEMENT (SECOND) OF TORTS ignores the fact that the *Pleas* court expressly declined to require improper purpose as the *exclusive* means of satisfying the fifth element. Wrongful means would also satisfy the test. *Pleas*, 112 Wn.2d at 803-04. *Pleas* made clear the purpose of the new element was only to require some wrongfulness beyond the fact of the interference itself. *Id.* at 804. But this additional wrongful-

ness does not turn exclusively on subjective intent, although intent would suffice. "Interference can be 'wrongful' by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession." *Id.* Such reasoning is consistent with other jurisdictions that have looked to the RESTATEMENT (SECOND) OF TORTS for guidance. *See, e.g., Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1, 19-20 (1st Cir. 1979), *cert. denied, Durham Distrib. v. Bombardier Ltd.*, 449 U.S. 890, 101 S. Ct. 248, 66 L. Ed. 2d 116 (1980); *Straube v. Larson*, 287 Or. 357, 600 P.2d 371, 7 A.L.R.4th 557 (1979); *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982); *see also* MODEL JURY INSTRUCTIONS: BUSINESS TORTS LITIGATION § 1.03[4][A], cmt. at 11 (2d ed.). PCM acted wrongfully when it attempted to enforce a void policy provision through a bogus claim of security entitlement. PCM's assertion of subjective good faith is irrelevant—although I cannot see how a baseless claim of security interest can be asserted in "good faith" in any event. The "wrongful" act was violating the public policy contained in the UIM statute and asserting a security interest to which it was not entitled. This cause of action is distinct from the CPA cause of action but arises from some of the same facts.

I would, therefore, affirm the trial court's summary judgment on the CPA claim but reverse the trial court's dismissal of the tortious interference claims. I dissent from a majority opinion which is wrong in both respects.

ALEXANDER, J. (dissenting) — In affirming an award of attorney fees for Dennis Leingang, the majority misinterprets our decision in *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 904 P.2d 731 (1995), and, as a consequence, renders a decision inconsistent with our holding in *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). I, therefore, dissent with respect to that portion of the majority opinion.

The majority's error is most evident in the following statements:

> The insurer [in *McGreevy*] admitted there was some coverage, but the insured asserted there was a different *amount of coverage* available under the policy. . . . The present case [*Leingang*] is like the *McGreevy* case in that the insurer admitted there was some coverage but disputed the *scope of the coverage.*

Majority op. at 146-47 (emphasis added). However, the issue litigated in *McGreevy* was not "the amount of coverage available" under an insurance policy. Indeed, the insurer in *McGreevy* conceded that there was coverage under the policy for the vehicle McGreevy was occupying when he was killed, and it paid the maximum benefit provided thereunder.

The disagreement had to do with whether the coverage, provided under the policy for three other vehicles owned by the McGreevys, could be "stacked" on top of the coverage for the vehicle over which there was no dispute. We affirmed the trial court's decision that the coverage provided for all four vehicles could be "stacked." In addition, we affirmed the trial court's award of attorney fees to the insured because the McGreevys were forced to litigate whether the insurance policy provided them with the disputed coverage relating to the three other vehicles. In doing so, we reaffirmed the rule that requires " 'an award of fees . . . in any legal action where the insurer compels the insured to assume the burden of legal action to obtain the full benefit of [the] insurance contract[.]' " *McGreevy*, 128 Wn.2d at 32 (quoting *Olympic S.S.*, 117 Wn.2d at 53).

Despite some similarities between the facts in *McGreevy* and the instant case, no one contends here that the purchase of a health insurance policy from Pierce County Medical Bureau, Inc., provided Leingang with multiple coverages that could possibly be "stacked." The only dispute here concerns the value of a claim, the insurer contending that it should recoup the medical expenses it paid on Leingang's behalf, for which Leingang also received payments from his automobile insurance carrier.

This case, therefore, presents a different question than

was at issue in *McGreevy*. We alluded to the nature of that difference in *McGreevy* when we said that

> the rule articulated in *Olympic Steamship* is applicable where the insurer forces the insured to litigate questions of coverage, but that the rule does not apply in instances where the controversy is merely over the amount of, or the denial of, a claim. *See Dayton v. Farmers Ins. Group,* 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994).

*McGreevy*, 128 Wn.2d at 32 n.4. The language in *Dayton* to which we referred is:

> This case presents an entirely different set of circumstances [than were presented in *Olympic Steamship*]. Coverage is not an issue; [the insurer] accepted coverage. Unlike the insured in *Olympic Steamship*, Mr. Dayton [the insured] has not compelled [the insurer] to honor its commitment to provide coverage. Instead, this case presents a dispute over the value of the claim presented under the policy. Such disputes are not properly governed by the rule in *Olympic Steamship*.
>
> . . . *Legitimate differences of opinion in the value of a claim negotiated in good faith do not deprive an insured of the benefit of coverage bargained for*[.]

*Dayton*, 124 Wn.2d at 280-81 (emphasis added).

This case presents squarely the question we dealt with in *Dayton*: Is an award of attorney fees available under *Olympic Steamship* where the insurer (1) concedes that coverage is provided; (2) affirmatively acknowledges that coverage by paying the maximum amount available under that policy; but (3) disputes the value of a claim, according to the terms of the policy? *Dayton* answered this question in the negative. The same answer should be given here.

The majority justifies its affirmance of the award of attorney fees here by stating that the "real dispute in this case went to the issue of coverage," such that it was appropriate to invoke the rule on attorney fee awards established by *Olympic Steamship*. Majority op. at 148. It concludes that the case involves a coverage issue, in part, because the insurer argued at trial that there was no

coverage. The majority also reaches this conclusion because a provision in a health care insurance policy that nominally "excluded" coverage in a situation similar to that which is presented in *Leingang* was considered by this court in another case to "involve[ ] an issue of the limit of coverage." Majority op. at 146 (citing *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 759 n.2, 845 P.2d 334 (1993)).

The first rationale offered by the majority is of no moment, this court having a duty to apply the correct law regardless of the argument made by one or both parties. *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 623, 465 P.2d 657 (1970) ("A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it.").

Our opinion in *Brown* does not support the second rationale relied upon by the majority to affirm an award of attorney fees in this case. First, attorney fees were not at issue in *Brown*. Our holding there simply was that a health care insurer may deny benefits to an insured who is also covered by an underinsured motorist policy, but only to the extent that double recovery for medical expenses is avoided:

> [I]nsurance contract provisions which prevent double recovery will be enforced as not violative of public policy. Thus, the provisions at issue may be enforced, *but only to the extent they bar double recovery, i.e.,* they "exclude" coverage only to the extent necessary to prevent double recovery for medical expenses.

*Brown*, 120 Wn.2d at 758 (citation omitted).

The majority seizes upon this explanation and extrapolates from it that a provision barring doubling recovery must be an issue of "coverage." I do not read the above statement as does the majority. By using "exclude" as we did in the above-quoted statement, we were not intending to equate a provision that prevents double recovery with a

provision that prevents any recovery at all due to a lack of coverage. To read the above-quoted statement as the majority appears to read it leads to the illogical conclusion that the provision in every insurance policy that prevents an insured from recovering more than the amount of the policy also presents a question of coverage, when, as here, the only question presented is the amount of the claim.

If these terms are read in the nontechnical manner outlined above, the majority's reliance upon *Brown* for the proposition that *Leingang* presents "an issue of coverage" evaporates. *Leingang* presents only a question regarding the value of his claim, which is precisely the issue we resolved in *Dayton*. Under *Olympic Steamship*, an award of attorney fees is not warranted. Consequently, I would reverse.

Reconsideration denied February 27, 1997.