# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SALLY HASS, a single woman, | No. 56972-8-II |
| Appellant/Cross-Respondent, | |
| v. | |
| WILLIAM SCHOURUP and BONNIE J. SCHOURUP, husband and wife; TIM BAUMGARTNER and NIKKI BAUMGARTNER, husband and wife; and the BAUMGARTNER LIMITED PARTNERSHIP, a Washington limited partnership, | UNPUBLISHED OPINION |
| Respondents/Cross-Appellants. | |

CRUSER, A.C.J. – Sally Hass sued William and Bonnie Schourup for breach of contract and Tim Baumgartner (Baumgartner), Nikki Baumgartner, and the Baumgartner Limited Partnership (collectively, the Baumgartners) for tortious interference with a contract after William Schourup (Schourup) sold a boathouse that Hass believed she had contracted to purchase from him to Baumgartner. The trial court granted the Baumgartners' motion for partial summary judgment and dismissed Hass's tortious interference claim after determining that Hass had failed to establish a question of fact as to whether she had suffered "pecuniary damages." Clerk's Papers (CP) at 308. The trial court then directed the entry of a final judgment as to the tortious interference claim

pursuant to CR 54(b) after finding that there was no just reason for delay and stayed the trial court proceedings pending the resolution of the appeal.

Hass appeals the dismissal of her tortious interference claim, arguing that she established a question of fact as to whether she had suffered pecuniary damages. She asserts that the evidence establishes that she suffered a pecuniary loss, specifically the loss of the boathouse. The Baumgartners cross-appeal, arguing that the trial court abused its discretion when it granted CR 54(b) certification and that, if we do not affirm the summary judgment order, we should dismiss the appeal and remand for Hass to go to trial against the Schourups.

Because Hass failed to establish a question of fact as to whether she suffered any pecuniary damages, we affirm the trial court's order granting summary judgment on the tortious interference claim and dismissing that claim with prejudice. Because we affirm the trial court's decision, we do not address the Baumgartners' cross-appeal challenge to the trial court's CR 54(b) certification.

## FACTS

### I.   LAWSUIT

Hass believed that she had contracted to purchase a boathouse owned by Schourup for $55,000. After Schourup sold the boathouse to Baumgartner, Hass filed suit against the Schourups and the Baumgartners alleging a breach of contract claim against the Schourups and a tortious interference with a contract claim against the Baumgartners.

In her complaint, Hass alleged that on July 8, 2019, she had contacted Schourup and offered to buy his boathouse for $55,000. According to Hass, she advised Schourup that she planned to be out of town from July 9 through July 16, and they agreed that she would leave a deposit of $1,000 for him at the marina office and pay the remainder when she returned.

Later that day, Baumgartner contacted Hass, told her that he had learned that Schourup had planned to sell her his boathouse, and asked her if she would prefer to purchase his (Baumgartner's) boathouse. Schourup also contacted Hass and told her that he would let her out of the contract with him if she preferred to purchase Baumgartner's boathouse. After looking at Baumgartner's boathouse, Hass informed him that she preferred to purchase Schourup's boathouse.

Hass dropped off a $1,000 check for Schourup at the marina office before leaving town. She then met with friends at the boathouse to celebrate the purchase. Hass alleged that during this celebration, her partner talked with a friend about him renting part of the boathouse over the winter, before Hass planned to use it for a boat.

On July 16, Hass learned that Schourup had sold the boathouse to Baumgartner.

Hass alleged that she had planned to store a shipment of goods from Alaska in the boathouse, that she incurred shipping and storage expenses related to those goods, and that she would not have arranged for the shipment of the goods if she had not believed she had purchased Schourup's boathouse.

Hass sought the following relief: (1) a judgment and order for specific performance requiring Schourup to rescind the sale of the boathouse to the Baumgartners and to transfer possession of the boathouse to Hass; and (2) "judgment in an amount to be proven at trial for the tortious interference with contract committed by defendant Baumgardner." *Id*. at 30.

## II. SUMMARY JUDGMENT MOTION

### A. MOTION AND SUPPORTING EVIDENCE

The Baumgartners moved for summary judgment on the tortious interference claim. They asserted that there were no genuine issues of fact regarding whether (1) Baumgartner intentionally interfered with the relationship between Hass and Schourup, (2) Baumgartner induced or caused Schourup to terminate his relationship with Hass, or (3) Hass suffered any pecuniary damages as a result of the alleged interference. In support of the motion for summary judgment, the Baumgartners provided sworn declarations from Baumgartner and their lawyer.

In his declaration, Baumgartner described the facts that he alleged led to his purchase of Schourup's boathouse. He asserted that prior to Schourup's deal with Hass, Schourup had orally agreed to sell him the boathouse for $40,000. He was surprised when Schourup told him that he had agreed to sell the boathouse to Hass. At Schourup's suggestion, Baumgartner showed Hass his boathouse to see if she might prefer to purchase it instead of Schourup's boathouse, but she still wanted to purchase Schourup's boathouse.

Baumgartner asserted that soon after this, Schourup contacted him and told him that the deal with Hass had not been completed because Hass had not delivered the correct deposit. Baumgartner then agreed to purchase the boathouse for $55,000. They met the next day, and he signed the purchase agreement and paid Schourup $55,000.

Baumgartner denied threatening Schourup with a lawsuit or legal action or raising his voice or becoming angry with him despite the confusion about the boathouse. Baumgartner also denied ever interfering or attempting to interfere with the agreement between Schourup and Hass. And he asserted that it was Schourup's sole decision to terminate his relationship with Hass and that he

never said or did anything to induce Schourup to do so. Baumgartner further stated that since purchasing the boathouse, his limited partnership had invested approximately $60,000 in improvements.

The Baumgartners' counsel's declaration included a transcript from Hass' deposition. During the deposition, counsel asked Hass if she lost any income or was damaged "in any other out-of-pocket way" when her attempt to purchase the boathouse failed. *Id*. at 75. She responded, "No." *Id*. at 75.

When counsel again asked Hass whether the loss of the boathouse had cost her any money, Hass responded that although they had "talked about the rental of the boathouse," she did not "really think about that as having lost income," and that she considered a storage issue that arose more of a "hardship" and "delay" than an expense. *Id*. at 76. Although she did state that she had to store some moving vans, she did not know how much longer they had to be stored due to any delay caused by the loss of the boathouse.

When counsel asked Hass what damages she was seeking, Hass responded that she wanted an apology and to be able to purchase the boathouse "at a reduced price." *Id*. at 78. She did not state that she was seeking any monetary damages for loss of rents, extra storage, or shipping costs.

B.      RESPONSE TO MOTION AND SUPPORTING EVIDENCE

In her response to the Baumgartners' summary judgment motion, Hass argued that the damage she incurred from the tortious interference was the loss of the boathouse.

In the deposition transcript attached to her response, Hass testified that after she believed she had contracted to purchase the boathouse, she had overheard her partner Dan Walsh discussing the possibility of renting or letting a friend use part of the boathouse until they were ready to

occupy it and that they had agreed to let him rent the boathouse during the winter. Hass also stated that she had planned to use the boathouse to store various items rather than storing them in another building that she owned.

When asked if the inability to use the boathouse to store those items resulted in additional storage costs, she responded, "I can't say that. I know — I can't say. What I know is that we were — had to pay some additional storage for [two twenty-foot vans] to be parked in Seattle for a while until we figured things out of were stuff was going to go." *Id*. at 110. She was unable to estimate the length of time the vans were parked in Seattle, but she asserted that she "could probably" get receipts showing all of the additional costs that she referred to in her complaint. *Id*. at 110. She also appeared to assert that her need for additional storage was caused by permitting issues related to another building that she was building in Bremerton.

C. SUMMARY JUDGMENT HEARING AND ORDER GRANTING SUMMARY JUDGMENT

At the motion hearing, the trial court stated that its primary concern was whether Hass had established a question of fact as to pecuniary damages. The court asked Hass to state what pecuniary damages she had suffered.

Hass responded that it was the loss of the property at issue, here, the boathouse, and that she was seeking specific performance of the contract. She did not mention any damages due to loss of rents or storage and shipping costs.

The trial court granted the Baumgartners' summary judgment motion and dismissed the tortious interference claim with prejudice.

6

D.      ORDER DIRECTING FINAL JUDGMENT

Hass then moved for an order directing that final judgment be entered dismissing her tortious interference claim. Haas also moved to stay the proceedings in the trial court pending the resolution of the appeal. Hass argued that if she was unable to immediately appeal, "she [would] be forced to try the case against the remaining defendants and then, if successful on appeal, retry the case again against the three defendants dismissed by summary judgment," and that she would incur significant additional costs and expenses "and [the duplicate trial] could potentially lead to multiple judgments against different defendants for the same injuries." *Id*. at 267. Schourup did not object to these motions.

The Baumgartners opposed the motions. They argued that Hass had not established any of the factors required to establish a danger of hardship or injustice that would be alleviated by an immediate appeal. They also argued that the three-day trial, which was set within a few days of the motion, could be completed well before the appeal was heard and that the delay could be an issue because Schourup was elderly and not in good health.

The trial court granted the motion to stay the trial court proceedings pending resolution of the appeal. It also entered an order finding that there was no just reason for delay in entering the final judgment and written findings under CR 54(b).

III.      APPEAL AND DENIAL OF MOTION TO DISMISS

Hass appealed the summary judgment order dismissing the tortious interference claim. The Baumgartners cross-appealed the trial court's order certifying the final judgment pursuant to CR 54(b).

After Hass filed the appeal, the Baumgartners moved to "dismiss this appeal as improvidently granted" pursuant to RAP 2.2(d), RAP 7.3, and Title 17 RAP. Mot. to Dismiss, *Hass v. Schourup*, No. 56972-8-II, at 7, 30 (Wash. Ct. App. June 28, 2022). The Baumgartners argued that the trial court abused its discretion when it entered the CR 54 (b) certification.

A commissioner of this court denied the motion to dismiss without prejudice. In their ruling the commissioner stated, "The respondents have filed a cross-appeal to preserve this issue and may again move to dismiss in their briefing. RAP 17.4(d)." Ruling, *Hass*, No. 56972-8-II (Aug. 1, 2022).

## ANALYSIS

### I.    SUMMARY JUDGMENT

When reviewing a summary judgment order, we review the order de novo, taking all of the facts and reasonable inferences in the light most favorable to the nonmoving party and performing the same inquiry as the trial court. *Elcon Const., Inc. v. E. Washington Univ*., 174 Wn.2d 157, 164-65, 273 P.3d 965 (2012). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

A party claiming tortious interference with a contractual relationship or business expectancy must prove five elements, including "resultant damage." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). "[A] claim of tortious interference . . . requires a threshold showing of resulting pecuniary damages." *Tamosaitis v. Bechtel Nat'l, Inc.*, 182 Wn. App. 241, 249, 327 P.3d 1309 (2014).

Hass argues that the trial court erred in granting summary judgment because she established that she had suffered pecuniary damages—specifically the loss of the boathouse. Hass does not

assert that she established a question of fact as to any other potential pecuniary loss, such as the loss of rents or the cost of storage.[1]

Hass argues that *Tamosaitis*, establishes that pecuniary loss can include the loss of personal property if there is a causal relation to the alleged tort, so the loss of the boathouse was a pecuniary loss. But, even presuming that Hass's characterization of *Tamosaitis* is correct, it would not apply here because the lost property at issue in *Tamosaitis* was owned by Tamosaitis, while here Hass never acquired ownership of the boathouse because the contract was not executed. *Id*. at 247.

Because Hass does not establish a pecuniary loss, she fails to establish a question of fact as to each element of her tortious interference claim. Accordingly, the trial court did not err when it granted summary judgment and dismissed this claim.

## II.    CROSS-APPEAL ISSUE: MOTION TO DISMISS APPEAL

In their cross appeal, the Baumgartners argue the trial court abused its discretion when it certified final judgment of the summary judgment order under CR 54(b) and entered final judgment. They argue that "if this [c]ourt does not affirm the trial court's order dismissing [Hass's] claim against the Baumgartners, it should dismiss this appeal and remand for [the] trial court to proceed to trial on [the remaining] claim against the Schourups." Br. of Resp't/Cross-Appellant at

---

[1] If Hass was to claim that the loss of rents or additional storage costs established the required pecuniary damages, her argument would still fail. The evidence Hass presented regarding the potential agreement to rent some of the boathouse to another party was based on hearsay, specifically a conversation she overheard between her partner and the other party, which cannot be considered on summary judgment. *Spohn v. Dep't of Lab. & Indus.*, 20 Wn. App. 2d 373, 378-79, 499 P.3d 989 (2021). And the evidence regarding the additional storage costs that she may have incurred was too equivocal, even when taken in the light most favorable to Hass, to establish pecuniary damage because Hass characterized the storage issue "more a delay of moving stuff" and asserted that she did not "think of it as a cost" but as "more of a hardship." CP at 76.

64. Because we affirm the trial court's order dismissing Hass's tortious interference claim and the Baumgartners request relief only if we reverse the trial court's order, we do not reach this issue.[2]

CONCLUSION

Because Hass failed to establish a question of fact as to whether she suffered any pecuniary damages, we affirm the trial court's order granting summary judgment on the tortious interference claim and dismissing that claim with prejudice. Because we affirm the trial court's decision, we do not address the Baumgartners' cross-appeal challenge to the trial court's CR 54(b) certification.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[2] The Baumgartners also contend that our commissioner's refusal to decide their motion to dismiss and referral of this motion to the appellate briefing was in error and that this issue should have been resolved at the earliest possible stage by the commissioner. They ask that we "provide guidance to future litigants" regarding challenges to CR 54(b) certifications. Br. of Resp't/Cross-Appellant at 44. But we need not opine on matters that are not relevant to our resolution of the appeal, and we decline to do so here. Moreover, we note that after a panel of this court denied the Baumgartners' motion to modify the commissioner's ruling, the Baumgartners did not move for discretionary review of the order denying the motion to modify. *See* RAP 13.3(c) (permitting a party to seek discretionary review at our supreme court of interlocutory decisions of the court of appeals).

No. 56972-8-II

CRUSER, A.C.J.

We concur:

VELJACIC, J.

CHE, J.